739 So.2d 1110 (1999)
TRANSOUTH FINANCIAL CORPORATION et al.
v.
Ronald A. BELL.
1971442.
Supreme Court of Alabama.
June 25, 1999.
*1111 J. Fairley McDonald III of Maynard, Cooper & Gale, P.C., Montgomery; and Richard H. Gill of Copeland, Franco, Screws & Gill, P.A., Montgomery, for appellants.
Darron C. Hendley, Montgomery; and Paul R. Cooper of Cooper & Cooper, Montgomery, for appellee.
HOUSTON, Justice.[1]
TranSouth Financial Corporation ("TranSouth"), Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services are defendants in an action pending in the Lowndes Circuit Court. They appeal from the trial court's order denying their motion to compel arbitration of the claims filed against them by the plaintiff Ronald A. Bell. We reverse and remand.
Bell's claims are based on allegations of fraud in connection with loans that he obtained from TranSouth on January 28, 1993; June 25, 1994; November 30, 1994; and November 8, 1995. Bell alleges that a TranSouth loan officer, acting on the defendants' behalf, misrepresented to him that he was required to purchase credit-life insurance to cover each of those loans. Bell also alleges that the loan officer misrepresented to him that he had to obtain new loans instead of having funds advanced to him from prior loans; this practice, according to Bell, resulted in his incurring unnecessary fees and charges and having to pay higher interest rates.
During the execution of documents in connection with a loan on September 17, 1996, Bell signed a separate "Arbitration Agreement," which provided:
 "READ THIS ARBITRATION AGREEMENT CAREFULLY. IT
 LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING
 YOUR RIGHT TO BRING A COURT ACTION.
 "ARBITRATION AGREEMENT
"[At this point, the agreement sets out, in a box, the following items:
"BORROWERS (Called "LENDER (Called `we' or `us')
`you' or `your')
 "TranSouth Financial
"Bell, Ronald A. Corporation
"[address] "[address]
"Date of Loan "Account Number]
"9/17/96
"In consideration of the mutual promises made in this agreement, you and we agree to arbitrate, under the following terms, all claims and disputes between you and us, except as provided otherwise in this agreement:
"ARBITRATION: Arbitration is a method of resolving disputes between parties without filing a lawsuit in court. By signing this agreement, you and we are both agreeing that if there are any disputes between you and us, you and we must submit them to an arbitrator. The arbitrator's decision is final and binding on you and us. The arbitrator does not have to give any written reasons for the decision. You and we are giving up the right to bring a lawsuit in court, including the right to a jury trial.

"DISPUTES COVERED: This agreement applies to all claims and disputes between you and us. This includes, without limitation, all claims and disputes *1112 arising out of, in connection with, or relating to:

"*your loan from us today;

"*any previous loan from us and any previous retail installment sales contract or loan assigned to us;

"*all the documents relating to this or any previous loan or retail installment sales contract;

"*any insurance purchased in connection with this or any previous loan or retail installment sales contract;

"*whether the claim or dispute must be arbitrated;
"*the validity of this arbitration agreement;
"*any negotiations between you and us;
"*any claim or dispute based on an allegation of fraud or misrepresentation;
"*any claim or dispute based on federal or state statute; and
"*any claim or dispute based on an alleged tort.
"This agreement also applies to any claim or dispute, including all the kinds of disputes listed above, between you and any of our employees or agents, any of our affiliate corporations, and any of their employees or agents. Affiliate corporations are our parent corporations, subsidiary corporations, and sister corporations. Some of our affiliates are Associates First Capital Corporation, Associates Corporation of North America, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc.

"You agree that we do not have to initiate arbitration before exercising our remedies of repossession or nonjudicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.
"ARBITRATION RULES: The arbitration will be conducted under the `Commercial Arbitration Rules' of the American Arbitration Association that are in effect at the time arbitration is started and under the rules set forth in this agreement. If there is any conflict between what the Commercial Arbitration Rules say and what this agreement says, what this agreement says will govern. We are giving you a copy of the Commercial Arbitration Rules at the time you sign this agreement. If you lose your copy, we will give you another one if you ask for it.
"STARTING ARBITRATION: Either you or we can start arbitration [anytime] a dispute arises between you and us. To start arbitration, you or we must do the following things:
"1. Complete a Demand For Arbitration (a copy is attached to this agreement)
"2. Send three copies of the completed Demand for Arbitration and three copies of this agreement, along with $125 filing fee, to:
American Arbitration Association 1975 Century Boulevard, N.E., Suite 1
Atlanta, Georgia 30345
"3. Send one copy of the Demand For Arbitration to the other party (that is, if we start arbitration, we send it to you; if you start arbitration, you send it to us) at the address shown on the agreement.
"COSTS OF ARBITRATION: If you start arbitration, you agree to pay the initial filing fee required by the American Arbitration Association up to a maximum of $125. We agree to pay for the filing fee and any deposit required by the American Arbitration Association in excess of $125. After the American Arbitration Association receives a Demand For Arbitration, it will bill us for that excess. We also agree to pay the costs *1113 of the arbitration proceeding up to a maximum of one day (eight hours) of hearings. If we start arbitration, we will pay the filing fee, required deposit, and costs of one day of hearings. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration proceeding that go beyond one day of hearings. The Commercial Arbitration Rules determine who will pay those fees.
"SELECTION OF [ARBITRATOR]:
The American Arbitration Association maintains lists of approved arbitrators. Arbitrator(s) will be selected from those lists according to the Commercial Arbitration Rules.
"LOCATION OF ARBITRATION:
The arbitration will take place in the county where you live unless you and we both agree to another location.
"ENFORCEMENT OF ARBITRTION DECISION: After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.
"OTHER IMPORTANT AGREEMENTS:
"1. This agreement does not affect the applicability of any statute of limitations.
"2. The loan and insurance transactions between you and us are transactions involving interstate commerce, using funds coming from outside the state. The Federal Arbitration Act applies to and governs this agreement.

"3. If either you or we should need to file a lawsuit to enforce this agreement, the suit may be brought in any court with jurisdiction.

"4. You and we agree that this agreement applies to all of your, and all of our, assigns and heirs.
"5. If any term of this agreement is unenforceable, the remaining terms of this agreement are severable and enforceable to the fullest extent permitted by law.
"6. This agreement supersedes any prior arbitration agreement that there may be between you and us.
"7. This agreement to arbitrate applies even if your loan has been paid in full, or charged-off by us, or discharged by bankruptcy.
"READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING A COURT ACTION.
"You and we have entered into this agreement as of the `Date of Loan' written above.
"Borrower: Ronald A. Bell Lender:
"/s/ Ronald A. Bell /s/ 
 By: [TranSouth loan officer]
"You acknowledge that you have received a completed copy of this agreement together with one copy of the Commercial Arbitration Rules and one Demand For Arbitration form.
"[Ronald A. Bell's initials]"
(Emphasis added.)
The defendants moved to compel arbitration of Bell's claims, based on the September 17, 1996, document. Bell alleged, in response to the defendants' motion to compel, that he had been fraudulently induced to sign the September 17, 1996, document. Specifically, Bell alleged that before he signed the document he asked the loan officer what it was and that he was told it was an arbitration agreement that covered only disputes arising out of the September 17, 1996, loan. In the alternative, Bell alleged that the loan officer suppressed from him the fact that the September 17, 1996, document expressly referred to all of his previous loan agreements with TranSouth and the fact that TranSouth had reserved the right to seek enforcement of the September 17, 1996, *1114 document in a federal court. The record does not contain any evidence supporting Bell's allegations. The trial court ruled that a fact question was presented as to the validity of the September 17, 1996, document and ordered a jury trial on the issue of arbitrability.
After carefully examining the record and the briefs, we hold that the trial court erred in denying the defendants' motion to compel arbitration of Bell's claims. A motion to compel arbitration is analogous to a motion for a summary judgment. Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995); Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260 (Ala.1995). The September 17, 1996, document presented by the defendants prima facie showed that Bell had agreed to arbitrate disputes arising out of previous loan transactions and that that arbitration agreement was executed as part of a financial transaction that involved interstate commerce. Thus, after the defendants prima facie demonstrated that they were entitled under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), to arbitrate Bell's claims, the burden shifted to Bell to back up his fraud allegations with an evidentiary showing of some kind; otherwise, the defendants' motion to compel arbitration was due to be granted. See Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454 (Ala. 1999) (after a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence indicating that the supposed arbitration agreement is not valid or does not apply to the dispute in question); Allied-Bruce Terminix Cos. v. Dobson, supra (the nonmovant must present at least some evidence to substantiate his factual allegations; mere demand for a jury trial on the issue of arbitrability is not enough); see also Ex parte Napier, 723 So.2d 49 (Ala. 1998) (the burden of proving unconscionability is on the party opposing arbitration).
As noted, the record contains no evidence supporting Bell's fraud allegations, although it does indicate that Bell may have intended to attach an affidavit to his response to the defendants' motion to compel. Bell has attached as an appendix to his brief in this Court an affidavit wherein he states that the loan officer told him "that the arbitration agreement was for the 9/17/96 loan only" and that the loan officer "did not tell [him] that the arbitration agreement would cover previous loans which [he] had taken with TranSouth." Bell contends that he was under no duty to read the September 17, 1996, document; he argues, instead, that a jury could find his reliance on the alleged statements of the loan officer to be justifiable under the circumstances.[2] Bell asserts in his brief that he submitted the affidavit to the trial court for consideration and that he provided the defendants with a copy of it. The defendants dispute this; in fact, the record indicates that the defendants specifically argued to the trial court that Bell had presented no evidence in support of his fraud allegations. Bell did not file a Rule 10(f), Ala.R.App.P., motion to supplement the record with the affidavit. Under these circumstances, this Court will not go outside the record and consider the document attached to Bell's brief. See Rowe v. Isbell, 599 So.2d 35 (Ala.1992); Smith v. Smith, 596 So.2d 1 (Ala.1992).
Because the record contains no evidence rebutting the defendants' prima facie showing of arbitrability, and because we find no other basis in the record for affirming the trial court's order, we must *1115 reverse the trial court's order denying the defendants' motion to compel arbitration.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, COOK, SEE, LYONS, BROWN, and JOHNSTONE, JJ., concur.
JOHNSTONE, Justice (concurring).
I concur with the majority. Further, while the plaintiff-appellee argues that the McCarran-Ferguson Act saves Alabama statutory law barring the two insurance company defendants from specifically enforcing the arbitration agreement, the record of the proceedings before the trial court is not sufficiently developed regarding the role or participation of these two particular defendants to allow us to address this argument.
NOTES
[1] This case was originally assigned to another Justice. It was reassigned to Justice Houston on February 12, 1999.
[2] Bell filed his action before March 15, 1997; therefore, the "justifiable reliance" standard would apply. See Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997).