860 So.2d 1265 (2003)
BAPTIST HEALTH SYSTEM, INC.
v.
Lisa MACK.
1011279.
Supreme Court of Alabama.
April 18, 2003.
*1266 William G. Somerville III and Lynlee Wells Palmer of Johnston Barton Proctor & Powell, LLP, Birmingham, for appellant.
Cecil G. Duffee III of Duffee & Associates, L.L.C., Birmingham, for appellee.
HARWOOD, Justice.
On October 19, 2001, Lisa Mack, a licensed practical nurse, sued her employer, Baptist Health System, Inc. ("BHS"), which operates a number of health-care facilities including the Shelby Ridge Nursing Home ("Shelby Ridge") where Mack was employed. Mack also sued the Alabama Department of Industrial Relations ("DIR") and other fictitiously named defendants. As finally amended, Mack's complaint presented claims against BHS alleging refusal to pay workers' compensation benefits, retaliatory discharge, and wrongful termination. Mack's complaint also served as a notice of appeal of DIR's decision to deny her request to receive unemployment-compensation benefits.
After various filings by DIR and Mack, the trial court ordered that Mack's retaliatory-discharge and wrongful-termination claims against BHS be decided before her unemployment-compensation *1267 claim against DIR was adjudicated.[1] Thereafter, BHS moved the court to stay the proceedings and compel arbitration of Mack's retaliatory-discharge and wrongfultermination claims. BHS relied on an arbitration provision contained in a document entitled "Dispute Resolution Program" ("the Program") BHS provided to its employees. Mack opposed the motion and filed a response, and BHS submitted a reply. After BHS subsequently supplemented its reply to Mack's opposition to arbitration, the trial court entered an order denying BHS's motion to stay and to compel arbitration. BHS filed a motion to sever Mack's workers' compensation claim from her retaliatory-discharge and wrongful-termination claims; that motion was granted. Next, BHS appealed the trial court's denial of its motion to compel arbitration to this Court, arguing that it is entitled to compel arbitration under the Program.
"`"[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review." Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999). Furthermore:
"`"A motion to compel arbitration is analogous to a motion for [a] summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction [substantially] affecting interstate commerce. Id. `After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.'"

"`Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted).'

"Vann v. First Community Credit Corp., 834 So.2d 751, 752-53 (Ala.2002)."
Potts v. Baptist Health System, Inc., 853 So.2d 194, 196-97 (Ala.2002).
The record shows that in November 1997 BHS implemented the Program effective January 1, 1998, requiring that all disputes arising between BHS and its employees be submitted to alternative dispute resolution. Details of the Program were not contained in any employee handbook but rather were set out in a separate document ("the Program document"). Mack stated in her affidavit that she received a copy of the Program document "after she began to work at BHS." The Program document provides, in pertinent part:
"Arbitration is a substitute for a traditional lawsuit. Arbitrations are heard and decided by an independent arbitrator who is chosen by both sides. After listening to the employee and BHS present their positions and after reviewing all the evidence presented, the arbitrator has the authority to award the employee and BHS any relief that they would be able to obtain in a court room, including money damages where appropriate. The arbitrator's decision is final and binding upon both the employee and BHS.
"....

*1268 "The [P]rogram is binding on all employees. This means that your decision to accept employment or continue employment after receiving notice of this Program, will mean that you have agreed to and are bound by the terms of this Program. If you remain employed or accept employment, this document constitutes a binding contract between you and BHS. Likewise, the terms of this Program are binding on BHS. This Program precludes an employee and BHS from going to court to have disputes heard by a judge or jury.
"This Program is part of the employment relationship between an employee and BHS. It is not, however, a guarantee that employment will continue for any specified period of time or end only under certain conditions. Nothing contained in this [P]rogram limits in any way an employee's right to resign from employment with BHS at any time for any reason or BHS's right to terminate employment at any time for any reason.

"B. SCOPE OF THE ARBITRATION PROCEDURE

"By remaining or becoming employed after receiving notice of this Program, you consent to resolution by arbitration of any dispute, whether or not arising out of your employment (including your application, your hiring, or your failure to be hired) or its termination, that you may have with or against BHS or that BHS may have with or against you, except as otherwise provided herein. BHS also consents to resolution, by arbitration, of all disputes between you and BHS, except as otherwise provided herein.
"The disputes covered by this Program include, but are not limited to, all claims and controversies including, but not limited to, claims for wages or other compensation due; ... claims for retaliation for filing or prosecuting workers' compensation claims; claims for benefits (except where an employee benefit or pension plan specifies that its claims shall result in an arbitration procedure different from this one)....
"Excluded from this Program are claims by employees for workers' compensation (excluding retaliation claims) or unemployment compensation ....
"....
"1. Interstate Commerce. By applying for employment or by becoming or remaining employed with BHS, you agree that BHS engages in transactions involving interstate commerce and that your employment involves such commerce."
(First emphasis supplied; second emphasis original.) On November 20, 1997, Mack signed a document entitled "Acknowledgment of Receipt of BHS Dispute Resolution Program," which stated, in pertinent part:
"I acknowledge receipt of the BHS Dispute Resolution Program document. I understand I am obligated to read this document as it governs my continued employment and all future legal disputes between me and Baptist Health System as defined in the document. I understand that it is my responsibility to consult my Human Resource director if I have any questions."
(Emphasis original.) As attested to by Cindy Nicholson, the director of human resources at Shelby Medical Center,[2] who is "familiar with the day-to-day operations of Shelby Medical Center and [Shelby Ridge]," meetings were held with the employees to explain the terms of the Program and to ensure that BHS employees *1269 were aware of the Program and the arbitration provision contained in the Program document. Nicholson stated that notices regarding the Program were included in every BHS employees' paycheck. Mack continued her employment with BHS after her receipt and acknowledgment of the terms of the Program document.
Mack asserts in her complaint that, on November 4, 1998, while continuing in her employment with BHS as a nurse and while acting in the course and scope of that employment, she suffered an "on-thejob injury." As a result of her injury, Mack was partially disabled for a period of time and underwent medical treatment. Mack alleges in her complaint that BHS "failed and/or refused" to pay her workers' compensation benefits. Thereafter, on June 19, 2001, while still continuing to work at Shelby Ridge, Mack allowed two nursing assistants to leave the facility for personal purposes during working hours.[3] They remained absent for approximately an hour, which was in excess of the 30minute break permitted by Shelby Ridge.[4] Mack did not to report the employees' extended absences to her superiors. On June 25, 2001, BHS terminated Mack's employment at Shelby Ridge because it determined that Mack's action of not reporting the nursing assistants' prolonged absences left the facility "dangerously understaffed." Mack argues that the termination was in retaliation for her workers' compensation claim against BHS. The record shows that Mack was eventually rehired by BHS; in BHS's brief filed with this Court on May 23, 2002, BHS states that Mack was employed at Shelby Baptist Medical Center.
The trial court's thoughtful nine-page order denying BHS's motion to stay and to compel arbitration expressed its rationale as follows:
"In the earlier case of Ex parte McNaughton, 728 So.2d 592 (Ala.1998), the Court again turned to the exact language contained in the acknowledgment to determine if a binding agreement to arbitrate had been created through terms set forth in an employee handbook. The Court quoted the terms of the acknowledgment as follows:
"`The acknowledgment form contains the following pertinent language:
"`"At-Will Employment

"`"I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or conditions of employment between myself and [United].
"`"I understand that the employment relationship is `at will' and is based upon the mutual consent....
"`"....
"`"Internal Dispute Resolution/Employment Arbitration Policy....
"`"These policies provide the opportunity for prompt and objective review of employment concerns. I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all *1270 employment related disputes based on a legal claim to arbitration under [United's] policy." (Emphasis added [in McNaughton.])

"`McNaughton argues that because of the "at-will" nature of her employment and because of the provision expressly stating that the policies contained in the employee handbook are not binding, this Court should not construe the arbitration policy incorporated into the acknowledgment form to be a binding agreement. We disagree.' 728 So.2d at 595.
"The Court found that the employee's signature to this acknowledgment formed a binding agreement to arbitrate because, though the employment remained `at will,' the acknowledgment specifically exempted the provisions of the employment arbitration policy as the acknowledgment disclaimed the existence of other terms that could be construed as a contract of employment. Citing as authority Kelly v. UHC Management Co., 967 F.Supp. 1240 (N.D.Ala. 1997), the Court wrote:
"`... [T]he United States District Court for the Northern District of Alabama held that an acknowledgment form signed upon receipt of an employee handbook and that contained language identical to the language in the acknowledgment form signed by McNaughton created a binding contract to arbitrate employment disputes.... Just as with the acknowledgment form signed by McNaughton, the acknowledgment form signed in Kelly, [967 F.Supp. at 1243], provided: "I agree to submit all employment related disputes based on a legal claim to arbitration...." Just as with McNaughton's promise to arbitrate under United's arbitration policy, the employees' promise in Kelly, id. at 1260, to arbitrate under the employer's arbitration policy was supported by the consideration of at-will employment. The district court in Kelly held that the acknowledgment form signed by the employees created a binding agreement to arbitrate their claims against the employer.' 728 So.2d at 596.
"In Ex parte Beasley, [712 So.2d 338 (Ala.1998),] the Court reached the opposite result, namely, that no binding agreement to arbitrate existed for the at-will employee where the arbitration clause appeared in an employee handbook. Again, the case turned on the content of the acknowledgment form that the Plaintiff-employee actually signed. Beasley is very similar to the case sub judice, in that plaintiff was a hospital employee, employed with Brookwood Hospital owned by Tenet Healthcare, Inc. Plaintiff was already employed when Tenet initiated a dispute resolution program in 1995, whereby new and existing at-will employees were asked to agree to resolve employment disputes by arbitration. The policy was executed, as in the case before the Court, by distributing the plan in an employee handbook and requiring the employee to execute an acknowledgment form. The wording of the form in Beasley being material to the inquiry of whether a binding agreement was thus created is as follows:
"`... [T]he unsigned acknowledgment form in the standard employee handbook submitted by Brookwood with its mandamus petition contains the following pertinent language:
"`"I have received my copy of the... Employee Handbook which outlines my privileges and obligations....
"`"....

*1271 "`"I understand also that this handbook highlights company policies.... No written agreement concerning employment terms or conditions is valid unless signed by a facility executive director ... and no written statement or agreement in this handbook concerning employment is binding, since provisions are subject to change, and as all ... employees are employed on an `at-will' basis....
"`"I understand [Brookwood] makes available arbitration for resolution grievances. I also understand that as a condition of employment and continued employment I agree to submit any complaints to the [Fair Treatment Process] and agree to abide by and accept the final decision of the arbitration panel as ultimate resolution of my complaint(s) for any and all events that arise out of employment or termination of employment." (Emphasis added [in Beasley].)' 712 So.2d at 340.
"Beasley argued that, by its own terms, the arbitration clause contained in the handbook was not a binding agreement because it explicitly so states. Though Brookwood Hospital cited the Court to Patterson v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir.1997), as authority that the arbitration clause was nevertheless enforceable, the Court distinguished Patterson, and wrote:
"`The arbitration clause referred to [in Patterson], however, was the arbitration clause in the acknowledgment form, not the arbitration provision in the body of the employee handbook....
"`....
"`The acknowledgment form contained in Brookwood's standard employee handbook would have created a binding obligation to arbitrate under Patterson if Beasley had signed that form; however, she did not sign that form. Instead, the evidence submitted by Brookwood shows that Beasley signed an acknowledgment form that is similar to the standard form, but that does not contain the arbitration clause. Absent Beasley's signature on a document that contains a valid arbitration clause, we cannot hold that she agreed to arbitrate her employment claims against Brookwood. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).' (Emphasis added.) 712 So.2d at 340-341.
"....
"Based upon the hereinabove cited authority[,] the Court finds that before an at-will employee can be said to have waived his or her right to a jury trial on the issue of retaliatory discharge, by entering into an agreement of binding arbitration as an alternative forum for resolution of such disputes, the employee must explicitly agree to waive the right. As the authority from the Alabama Supreme Court clearly indicates, whether such a binding agreement to arbitrate is created or not depends upon the precise language contained in the document that the employee is asked to execute, namely, the acknowledgment form.
"The acknowledgment form submitted to the Court in this case does not at any point make reference to or use the word `arbitrate' nor does it employ the words `I understand' or `I agree.' Rather, the form states that the employee, executing the document, acknowledges receipt of the handbook; and that she understands that if she has any questions she is to consult with her Human Resources director. At no point does the acknowledgment *1272 form state that the employee, by executing the form, understands or agrees to submit her employment disputes to binding arbitration.
"As the Court does not find from the submissions that Defendant has established that a written agreement to arbitrate exists, the Court, therefore, does not find it necessary to address the issues regarding whether or not the agreement substantially affects interstate commerce, since without a written agreement these issues were not reached."
Critical to the curtailed scope of the review we undertake is this final paragraph quoted above:
"As the Court does not find from the submissions that Defendant has established that a written agreement to arbitrate exists, the Court, therefore, does not find it necessary to address the issues regarding whether or not the agreement substantially affects interstate commerce, since without a written agreement these issues are not reached."
BHS contends that the Program document constitutes a written agreement to arbitrate sufficient to compel arbitration. In support of its contention, BHS relies on Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987), for the proposition that a valid contract to arbitrate any disputes between it and Mack arose when Mack, having received a copy of the Program document and signed a form acknowledging receipt of and her obligation to read the Program document, continued her employment with BHS. This continued employment, according to BHS, constituted her knowing acceptance of the unilateral offer contained in the Program document of continued employment in consideration of her agreement to be bound by the arbitration provisions in the document.
In Hoffman-La Roche, a former employee sued his employer alleging wrongful discharge. The plaintiff argued that an employee handbook issued by his employer created a unilateral contract that modified the initial at-will employment contract. The plaintiff further argued that, as a result of that modification, the employer could terminate the plaintiff's employment only as prescribed by the terms of the handbook. Under the circumstances in Hoffman-La Roche, this Court held that the employee handbook did create a unilateral contract modifying the at-will employment agreement. After an extensive analysis of various legal authorities discussing the principles of contracts in the context of employment agreements, this Court stated:
"[W]e see no reason why a policy contained in an employee manual issued to an employee cannot become a binding promise once it is accepted by the employee through his continuing to work when he is not required to do so. Such a performance clearly provides any consideration necessary to the contract. The fact that the promise is communicated to the employee through the medium of a handbook, rather than by some other means, is simply of no consequence.
"Of course, to become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy. See Pine River [State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn.1983)]. However, whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, rather than by their uncommunicated beliefs. See Mayo v. Andress, 373 So.2d *1273 620 (Ala.1979).... Indeed, if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook."
512 So.2d at 733-34 (footnote omitted). The Hoffman-La Roche Court also established the analysis to determine whether the language contained in an employee handbook is sufficient to constitute an offer to create a binding contract. Specifically, this Court stated:
"The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
512 So.2d at 735.
Accordingly, we consider whether the trial court correctly determined that the acknowledgment was not sufficient to bind Mack to arbitrate her retaliatory-discharge and wrongful-termination claims.
Under Alabama law,
"`"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."` AT & T Techns., Inc. v. Communication Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); and see Ex parte Lovejoy, 790 So.2d 933 (Ala.2000). `"When deciding whether parties agree to arbitrate a certain matter (including arbitrability) courts generally ... should apply ordinary state-law principles that govern the formation of contracts."' Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala.2000) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). `"The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract."' Ex parte Grant, 711 So.2d 464, 465 (Ala.1997) (quoting Strength v. Alabama Dep't of Finance, Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala.1993)). `Assent must be manifested by something. Ordinarily, it is manifested by a signature. [However], [a]ssent may be manifested by ratification.' Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105, 108 (Ala.2000) (citing Southern Energy Homes, Inc. v. Harcus, 754 So.2d 622, 625 (Ala.1999)), wherein this Court remanded the case to the trial court for a finding of whether the purchasers of a manufactured home ratified and thereby accepted an arbitration provision by accepting repairs pursuant to a warranty containing the arbitration provision."
Ex parte Cain, 838 So.2d 1020, 1026-27 (Ala.2002). See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore, 751 So.2d 8, 11 (Ala.1999) ("This Court has held that the object of a signature on a contract is to show mutuality and assent, and that mutuality and assent can be manifested in ways other than a signature."). In the instant case, the language contained in the Program document provides that an employee's continued employment at BHS "will mean" that he or she agrees to and is bound by the terms of the Program document, and that the document constitutes a *1274 binding contract between the employee and BHS if the employee continues to be employed or accepts employment at BHS. The record also shows that Mack continued her employment with BHS upon her receipt of the Program document and for an extended period thereafter.
Mack argues that because the acknowledgment form she signed did not contain an arbitration provision she is not bound to arbitrate her claims against BHS, pursuant to this Court's decision in Ex parte Beasley, 712 So.2d 338 (Ala. 1998). As aptly noted in the trial court's order, the facts in Beasley are in many respects comparable to the facts in this case; however, they can be distinguished on a pivotal point. In Beasley, as in the present case, the employee, Beasley, was already employed by her employer when the employer adopted a new employment policy. That policy required all employees "as a condition of employment, to agree to submit employment claims" against the employer to binding arbitration. 712 So.2d at 339. Each employee was issued an employee handbook that included the arbitration provisions; the employer required each employee to acknowledge receipt of the handbook by signing an acknowledgment form. Beasley's "continued employment" was conditioned on her acknowledging the receipt of the new standard employment handbook. The "acknowledgment form in the standard employee handbook" contained the statement, to be affirmed by the signature of the particular employee, that "I also understand that as a condition of employment and continued employment I agree to submit any complaints to [arbitration] and agree to abide by and accept the final decision of the arbitration panel...." 712 So.2d at 340. Although Beasley did not sign that acknowledgment form, she did sign an acknowledgment form that contained language also present in the "acknowledgment form in the standard employee handbook," acknowledging by her signature that "no written statement or agreement in this handbook concerning employment is binding." 712 So.2d at 340 (emphasis omitted). The Beasley Court concluded that this statement "vitiate[d] the operative effect of the arbitration provision contained in the standard employee handbook." 712 So.2d at 340. The Court expressed the opinion, however, that "[t]he acknowledgment form contained in [the employer's] standard employee handbook would have created a binding obligation to arbitrate ... if Beasley had signed that form; however, she did not sign that form. Instead ... Beasley signed an acknowledgment form that is similar to the standard form, but that does not contain the arbitration clause." 712 So.2d at 341. In that regard, the language of the acknowledgment form in Beasley is comparable to the language in the Program document in the present case, pursuant to which the employee continuing in employment agrees to be bound by the terms of the Program. Thus, we conclude that Mack, by continuing her employment with BHS subsequent to her receipt of the Program document, expressly assented to the terms of the Program document and is therefore bound by the arbitration provision contained in that document.
Thus, we conclude that, contrary to the finding of the trial judge, a written agreement to arbitrate did exist, and we must reverse his order denying BHS's motion to stay and to compel arbitration premised solely on the ground that a written agreement to arbitrate did not exist. Given that the trial judge expressly limited his holding to the finding that no written agreement to arbitrate existed and expressly declared that he did "not find it necessary to address the issues regarding whether or *1275 not the agreement substantially affects interstate commerce, since without a written agreement these issues [are] not reached," we do not ourselves address those issues. As Mack reminds us in her brief, urging that we go no further than addressing the exclusive holding of the trial court, "[a]ppellate courts generally will not review questions not decided by the trial court."
Accordingly, having considered the one issue decided by the trial court, we reverse the trial court's order premised exclusively on its holding that no written agreement to arbitrate existed and remand this case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
HOUSTON, SEE, LYONS, BROWN, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. Lisa Mack did not sign any agreement to arbitrate and she did not accept any promise or offer.
Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725 (Ala.1987), does not support the claim of BHS that the parties contracted to arbitrate. Unlike the employee handbook in Hoffman-La Roche, the BHS "Program" did not promise or offer Mack any safeguard for her employment but expressly negated any such promise or offer. Indeed, the Program did not promise or offer Mack any benefit at all. Therefore, unlike the employee in Hoffman-La Roche, Mack did not accept any promise or offer and thereby form any contract.
This case is indistinguishable from Ex parte Beasley, 712 So.2d 338 (Ala.1998), which held that the employee's signing an acknowledgment form acknowledging receipt of an employee handbook but not containing an arbitration agreement did not bind the employee to the arbitration provisions in the handbook itself. Not even the dictum in Ex parte Beasley supports the claim of BHS. The Beasley dictum says that, if the employee had signed an acknowledgment form which expressly stated that the employee agreed to arbitrate, she would have been bound to arbitrate. The acknowledgment form signed by Mack contains no such agreement. The only undertaking by Mack in the acknowledgment form is that she "understands she is] obligated to read this document ... [and] that it is [her] responsibility to consult [her] Human Resources director if [she has] any questions." (Emphasis added.)
NOTES
[1] DIR is not a party to this appeal.
[2] Nicholson stated that Shelby Medical Center is "part" of BHS.
[3] The record does not show what events took place between Mack's November 1998 injury and this incident.
[4] Mack testified before DIR that the two employees she allowed to leave Shelby Ridge for personal purposes were entitled to a 30-minute break. Thus, we infer that a 30-minute break is consistent with the policies of Shelby Ridge and/or BHS.