Rel: May 19, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **<u>Southern Reporter</u>**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **<u>Southern Reporter</u>**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

————————————————

### SC-2022-0706

————————————————

## Women's Care Specialists, P.C.

v.

## Dr. Margot G. Potter

## Appeal from Jefferson Circuit Court
## (CV-21-903797)

————————————————

### SC-2022-0707

————————————————

## Dr. Karla Kennedy, Dr. Elizabeth Barron, and Beth Ann Dorsett

**v.**

**Dr. Margot G. Potter**

**Appeal from Jefferson Circuit Court**
**(CV-21-903798)**

COOK, Justice.

These consolidated appeals arise out of an employment dispute between Dr. Margot G. Potter and her former employer, Women's Care Specialists, P.C. ("Women's Care"), and out of a dispute between Potter and three Women's Care employees -- Dr. Karla Kennedy, Dr. Elizabeth Barron, and Beth Ann Dorsett ("the WC employees").

In case no. CV-21-903797, Potter alleged claims of defamation, tortious interference with a business relationship, and breach of contract against Women's Care. In case no. CV-21-903798, Potter alleged claims of defamation and tortious interference with a business relationship against the WC employees.

After the cases were consolidated by the Jefferson Circuit Court, Women's Care and the WC employees filed motions to compel arbitration on the basis that Potter's claims were within the scope of the arbitration provision in Potter's employment agreement with Women's Care and that

2

the arbitration provision governed their disputes even though Potter was no longer a Women's Care employee. In short, the arguments concerned whether Potter's claims are within the scope of the arbitration provision, whether the arbitration provision continued to apply after the "termination" of her employment, and when that termination occurred. The trial court entered an order denying those motions. Women's Care (appeal no. SC-2022-0706) and the WC employees (appeal no. SC-2022-0707) separately appealed; this Court consolidated the appeals.

For the reasons stated below, in appeal no. SC-2022-0706, we reverse the trial court's order denying Women's Care's motion to compel arbitration. In appeal no. SC-2022-0707, we reverse the trial court's order denying the WC employees' motion to compel arbitration.

<u>Facts and Procedural History</u>

On December 10, 2015, Potter, an obstetrician and gynecologist, entered into an employment agreement with Women's Care, which operates a medical clinic in Birmingham that specializes in obstetrics and gynecological services. Three years later, the employment agreement was

3

amended.[1]

In that amended employment agreement, Women's Care and Potter agreed to the following regarding termination of her employment:

"12. **Termination.** [Potter's] employment shall be terminated upon the happening of any of the following events:

"12.1 Notwithstanding any of the provisions of this Agreement, upon at least ninety (90) days' prior written notice served by either [Women's Care] or [Potter] upon the other, in which event [Women's Care] shall have the right at any time during the ninety (90) day notice period to terminate [Potter's] services, provided that [Women's Care] shall continue to pay [Potter] her normal compensation pursuant to this Agreement ... for the remainder of the notice period ...."

(Bold typeface in original; emphasis added.) Section 13.1 of the amended employment agreement further defined "termination of employment" as

"any termination of employment pursuant to Section 12 of this Agreement or, if and only so long as applicable, any other termination or deemed termination of employment with [Women's Care], ... including any situation where the facts and circumstances indicate that [Women's Care] and [Potter] reasonably anticipated that no further services would be performed after a certain date ...."

(Emphasis added.)

---

[1]We note that Kennedy, the president of Women's Care, and Barron, a physician with Women's Care, signed the amended employment agreement on Women's Care's behalf.

Next, in Section 22.2 of the amended employment agreement, Women's Care and Potter agreed to resolve "any and all disputes related in any manner whatsoever to [Potter]'s employment" by arbitration. Specifically, they agreed

> "<u>to resolve any and all disputes related in any manner whatsoever to [Potter]'s employment with [Women's Care] by binding arbitration.</u> [Women's Care] and [Potter] further agree to select the American Health Lawyers Association … to arbitrate the dispute. … <u>Disputes relating to employment include, but are not limited to, … claims based upon tort or contract laws or any other federal or state law affecting employment in any manner whatsoever</u>."

(Emphasis added.) Section 22.4 of the amended employment agreement provided the sole exception to this arbitration provision for "suits brought on behalf of [Women's Care] or [Potter] seeking a temporary restraining order, preliminary injunction and/or permanent injunction ('injunctive relief')." No other exceptions to the arbitration provision were made for any other forms of liability between the parties. In fact, in Section 17 of the amended employment agreement, Women's Care and Potter agreed that the termination of the agreement -- whether through the termination of Potter's employment or otherwise -- "shall not affect any liability or any other obligation of either party to the other which may have accrued prior to such termination."

5

On September 23, 2021, Women's Care gave Potter a "notice of termination" that stated:

> "Pursuant to Section 12.1 of the Employment Agreement between you and [Women's Care] dated December 10, 2015, as amended (the 'Employment Agreement'), notice is hereby served that your employment with WCS is being terminated. In accordance with Section 12.1 of the Employment Agreement, you are entitled to ninety (90) days' notice of termination. Therefore, your employment with [Women's Care] will terminate effective December 22, 2021. As we have advised you, [Women's Care] has exercised its right under the Employment Agreement to pay your normal compensation during the 90-day notice period and require you to cease performing services and vacate the premises immediately."

(Emphasis added.) Potter ceased performing services on behalf of Women's Care that same day.

Over the next couple of months, per the terms of Section 12.1 of the amended employment agreement, Women's Care paid Potter her normal compensation and apparently intended to do so until December 22, 2021, at which point the 90-day notice period would be over, thereby officially marking the end of Potter's employment with Women's Care.

According to Potter, after she received her termination letter and ceased performing services on behalf of Women's Care, the WC employees and others began making remarks to her former patients that, she alleges, were an attempt to "take over [her] practice." Those remarks

6

included statements such as:

- Potter "is staying at home with her husband and children."

- "We don't know where [Potter] is."

- Potter "has relocated to Florida."

- Potter has "been arrested."

- Potter has "retired and [is] not practicing medicine."

She also alleged that Women's Care and the WC employees tried to prevent her patients from finding out if she was still practicing so that they could continue their medical care with her.

On November 22, 2021, Potter began working for another medical practice in Birmingham. At that point, Women's Care ceased paying Potter her "normal compensation" as required under Section 12.1 of the amended employment agreement.

A month later, Potter commenced two separate actions -- one against Women's Care in which she alleged claims of tortious interference with a business relationship, defamation, and breach of contract and another against the WC employees in which she alleged claims of tortious interference with a business relationship and defamation. As stated previously, those actions were eventually

consolidated.

In response, Women's Care and the WC employees filed motions to compel arbitration. In its motion, Women's Care argued that, because Potter's claims against it related to her employment with Women's Care and because they had agreed in the amended employment agreement to resolve "any and all disputes related in any manner whatsoever to" Potter's employment with Women's Care through arbitration, those claims were subject to arbitration. In support of its motion, Women's Care attached, among other things, copies of the amended employment agreement and Potter's termination letter.

In their motion to compel arbitration, the WC employees raised many of the same arguments that Women's Care made in its motion. They also attached the same exhibits in support of their motion.

In her response to the motions, Potter acknowledged that her breach-of-contract claim against Women's Care was subject to arbitration but disputed that her tort claims against all the defendants were subject to arbitration. According to Potter, contrary to the contentions of Women's Care and the WC employees, her employment with Women's Care terminated on September 23, 2021 -- the day she

received her termination letter -- and not on November 22, 2021. Because her tort claims were based on incidents that, she said, occurred after her employment with Women's Care came to an end, they did not "relate in any way whatsoever" to her employment with Women's Care and, thus, were not governed by the arbitration provision in the amended employment agreement.

Following additional filings, the trial court entered an order denying the motions to compel arbitration on June 22, 2022. In appeal no. SC-2022-0706, Women's Care challenges the trial court's denial of its motion to compel arbitration. In appeal no. SC-2022-0707, the WC employees challenge the trial court's denial of their motion to compel arbitration.

Standard of Review

This Court has stated:

> "'"This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So. 2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting

9

> interstate commerce. <u>Id.</u> "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." <u>Jim Burke Automotive, Inc. v. Beavers</u>, 674 So. 2d 1260, 1265 n.1 (Ala. 1995) (opinion on application for rehearing).'"'

"<u>Hoover Gen. Contractors-Homewood, Inc. v. Key</u>, 201 So. 3d 550, 552 (Ala. 2016) (quoting <u>Elizabeth Homes, L.L.C. v. Gantt</u>, 882 So. 2d 313, 315 (Ala. 2003), quoting in turn <u>Fleetwood Enters., Inc. v. Bruno</u>, 784 So. 2d 277, 280 (Ala. 2000))."

<u>Performance Builders, LLC v. Lopas</u>, 341 So. 3d 1084, 1088-89 (Ala. 2021).

## Discussion

On appeal, Women's Care and the WC employees contend that the trial court erred in denying their motions to compel arbitration because, they say, the arbitration provision in the amended employment agreement is broad enough to apply to all of Potter's claims against them, which, they say, involve disputes related to Potter's employment with Women's Care. Potter contends, however, that only her breach-of-contract claim against Women's Care is subject to arbitration and that her tort claims against Women's Care and the WC employees are not subject to arbitration because, she says, they arose after her employment

10

with Women's Care ended.

Our analysis of whether -- and to what degree -- an arbitration agreement is enforceable as to certain alleged claims begins with determining whether each party met its initial evidentiary burden. As stated above, the party moving for arbitration has the burden of proving the existence of an agreement to arbitrate and the existence of a contract or transaction affecting interstate commerce. Performance Builders, 341 So. 3d at 1088-89. None of the parties dispute that the amended employment agreement executed by Women's Care and Potter contained an arbitration provision. They also do not dispute that the amended employment agreement at issue in this case affects interstate commerce. Accordingly, the burden then shifted to Potter -- the party opposing arbitration -- to present "'evidence tending to show that the arbitration agreement … does not apply to the dispute in question.'" STV One Nineteen Senior Living, LLC v. Boyd, 258 So. 3d 322, 324 (Ala. 2018) (quoting Alabama Title Loans, Inc. v. White, 80 So. 3d 887, 891 (Ala. 2011)).

### A. Potter's Breach-of-Contract Claim

As to her breach-of-contract claim against Women's Care, we note

that it is undisputed that, under Section 12.1 of the amended employment agreement, Potter and Women's Care agreed that, upon termination of Potter's employment, Women's Care would continue to pay Potter her "normal compensation" for the duration of the 90-day notice period. The record indicates that, in her complaint, Potter alleged that Women's Care breached that provision of the amended employment agreement by not paying her the requisite compensation.

In both her opposition to the motions to compel arbitration below and in her brief on appeal, Potter has conceded that these allegations relate to her employment with Women's Care and that, therefore, her breach-of-contract claim is subject to the arbitration provision in the amended employment agreement. Indeed, our review of the record reveals no reason why Potter and Women's Care could not be compelled to arbitrate that claim. Accordingly, we conclude that the trial court erred in denying Women's Care's motion to compel arbitration as to that claim.

### B. Potter's Tort Claims

Although Potter concedes that her breach-of-contract claim against Women's Care is subject to arbitration, she maintains that her tort claims against Women's Care and the WC employees are not. According to

Potter, her employment with Women's Care officially terminated on September 23, 2021 -- the day she received her termination letter. Because, she says, the incidents underlying her tort claims arose after that date, she asserts that those claims cannot be deemed "related in any manner whatsoever to" her employment with Women's Care and, thus, cannot be subject to arbitration.[2]

"'Whether an arbitration provision encompasses a party's claims "is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause."'" STV, 258 So.

---

[2]Potter does not argue that the WC employees are nonsignatories to the amended employment agreement and, thus, cannot claim the benefit of the arbitration provision. In fact, in her appellate brief, Potter specifically states that her argument on appeal is limited solely to the effect the timing of her termination had on whether her tort claims are subject to arbitration and that any characterization of her argument to the contrary is "wrong."

In any event, this Court has allowed a nonsignatory agent to enforce arbitration on behalf of the principal. See Ex parte Gray, 686 So. 2d 250 (Ala. 1996) (recognizing that a nonsignatory "agent" was allowed to invoke arbitration); Stevens v. Phillips, 852 So. 2d 123, 131 (Ala. 2002) (recognizing that an agent "stands in the shoes" of her principal). See also McDougle v. Silvernell, 738 So. 2d 806, 809 (Ala. 1999) (recognizing that a closing attorney, as agent of title insurer, had standing to enforce an arbitration provision even though the attorney was not a party to the agreement).

3d at 325 (quoting <u>Green Tree Fin. Corp. of Alabama v. Vintson</u>, 753 So. 2d 497, 505 (Ala. 1999), quoting in turn <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 684 So. 2d 102, 110 (Ala. 1995)).

As noted previously, in the amended employment agreement, Women's Care and Potter agreed that "any and all disputes related in any manner whatsoever to [Potter]'s employment" would be resolved by arbitration and that "<u>[d]isputes relating to employment include, but are not limited to, … claims based upon tort or contract laws or any other federal or state law affecting employment in any manner whatsoever</u>." (Emphasis added.) Women's Care and the WC employees contend that the language of this provision is "broad" and makes clear that any and all disputes related to Potter's employment -- including "claims based upon tort" -- are subject to arbitration. Potter contends, however, that that provision applies only to disputes that arose while she was still employed by Women's Care.

This Court has repeatedly held that the phrase "relating to" in an arbitration provision is to be given a "<u>broad construction</u>." <u>Carroll v. W.L. Petrey Wholesale Co.</u>, 941 So. 2d 234, 236 (Ala. 2006) (quoting <u>Serra Chevrolet, Inc. v. Hock</u>, 891 So. 2d 844, 847 (Ala. 2004)). In the

14

employment context, in order for a dispute to be compelled to arbitration, it must relate in some way to the employment relationship or agreement. See <u>Carroll</u>, 941 So. 2d at 241.

With regard to whether tort claims can be deemed arbitrable, this Court has explained:

> "<u>An arbitration clause cannot be 'enforced to require arbitration of a claim alleging an intentional tort that is in no way related to the underlying transaction that gave rise to the arbitration agreement</u>.' <u>Green Tree Fin. Corp. v. Shoemaker</u>, 775 So. 2d 149, 151 n.3 (Ala. 2000). 'To hold otherwise would allow persons signing broad arbitration provisions to commit intentional torts against one another, which torts are outside the scope of their contemplated dealings, without concern that they might have to answer for their actions before a jury of their peers.' <u>Ex parte Discount Foods</u>, 711 So. 2d 992, 994 (Ala.), <u>cert. denied sub nom.</u> <u>Supervalu Inc. v. Discount Foods, Inc.</u>, 525 U.S. 825, 119 S. Ct. 71, 142 L. Ed. 2d 56 (1998)."

<u>Fountain Fin., Inc. v. Hines</u>, 788 So. 2d 155, 158 (Ala. 2000) (emphasis added). Thus, for Potter's tort claims to be subject to arbitration in this case, we must first determine whether those claims are related to her employment with Women's Care.

Here, the employment relationship between Women's Care and Potter is what gave rise to the amended employment agreement containing the arbitration provision at issue. Under Section 2 of the amended employment agreement, Potter agreed to "personally perform[]

histories and appropriate physical examinations" on "all new obstetrical and new gynecological patients" "exclusively on behalf of [Women's Care]" and to supervise other Women's Care employees to provide the care needed for those patients.

In her complaint, Potter alleged that, after she was given her termination letter, Women's Care -- through the WC employees -- "negligently or intentionally published false and defamatory statements" about her to her "patients, other doctors, nurses and hospital personnel" in an "attempt to take over [her] practice." She further alleged that, before receiving her termination letter on September 23, 2021, she "had business relations with over 8,000 patients she had treated at [Women's Care's clinic]" and that "[a]ll of these patients were patients she solely treated." (Emphasis added.) According to Potter, "[t]hrough the actions and statements of the [defendants] … [they] intentionally interfered with these business relations" and, as a proximate result of those actions, she has suffered damages. (Emphasis added).

The "patients" Potter mentions in her complaint were the patients she had when she was employed by Women's Care. Additionally, the business relationship with which she specifically alleges the defendants

interfered was her "business relations with over 8,000 patients she had treated at [Women's Care's Clinic,]" all of whom "were patients she solely treated [at Women's Care's Clinic]." Under these circumstances, it is evident that Potter's tort claims are certainly "related in any manner whatsoever to [Potter]'s employment" with Women's Care.

In addition, to the extent that there could be any doubt about how to construe the language setting out the scope of the arbitration provision, this Court has previously stated:

> "'In interpreting an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (… footnote omitted). "Thus, a motion to compel arbitration should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960)." Ex parte Colquitt, 808 So. 2d 1018, 1024 (Ala. 2001) ….'"

STV, 258 So. 3d at 325 (quoting Elizabeth Homes, L.L.C. v. Cato, 968 So. 2d 1, 7 (Ala. 2007) (emphasis altered).

However, there remains a question of whether the timing of Potter's termination from her employment with Women's Care impacts the

arbitrability of her tort claims against Women's Care and the WC employees. The United States Supreme Court has stated that "[r]ights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement." Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB, 501 U.S. 190, 207 (1991). Although contractual obligations may expire upon the termination of a contract, "structural provisions relating to remedies and dispute resolution -- for example, an arbitration provision -- may in some cases survive in order to enforce duties arising under the contract." Id. at 208. "We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement." Id. Absent a contrary indication, the parties' preference for arbitration may not automatically terminate with the contract. See Nolde Bros. v. Local No. 358, Bakery and Confectionary Workers Union, AFL-CIO, 430 U.S. 243, 253-54 (1977).

We note that Potter and Women's Care expressly agreed in Section 17 of the amended employment agreement that the termination of their agreement -- whether through termination of Potter's employment or otherwise -- "shall not affect any liability or any other obligation of either

18

party to the other which may have accrued prior to such termination." (Emphasis added.) Applying the caselaw discussed above, because Potter and Women's Care specifically agreed that any obligations they owed to one another -- including the obligation to arbitrate any disputes related to Potter's employment -- would not terminate upon the expiration or termination of the agreement, Potter's tort claims against Women's Care and the WC employees are still subject to arbitration regardless of when her employment with Women's Care ended.[3] Accordingly, the trial court's

---

[3]Given our resolution of this issue, we see no need to address exactly when Potter was terminated from her employment with Women's Care. However, even if we were called upon to decide this question, we note that Potter contends that, under Section 13.1 of the amended employment agreement, "termination of employment" occurs when "[Women's Care] and [Potter] reasonably anticipated that no further services would be performed after a certain date." Because her termination letter specifically told her to "cease performing services and vacate the premises immediately," Potter contends that her employment officially terminated on the date she received that letter and that, because the statements and actions underlying her tort claims against Women's Care and the WC employees occurred after that date, those claims cannot be subject to arbitration.

We note, however, as do Women's Care and the WC employees, that Section 13.1 of the amended employment agreement states:

"'Termination of Employment' shall mean any termination of employment pursuant to Section 12 of this Agreement or, if and only so long as applicable, any other termination or deemed termination of employment with [Women's Care], …

19

order denying the motions to compel Potter to arbitrate her tort claims is

due to be reversed.

## Conclusion

Based on the foregoing, in appeal no. SC-2022-0706, we hold that

Potter's breach of-contract claim and her tort claims against Women's

---

> including <u>any situation where the facts and circumstances indicate that [Women's Care] and [Potter] reasonably anticipated that no further services would be performed after a certain date</u> ...."

(Emphasis added.) It thus appears from the plain language of the amended employment agreement that Potter and Women's Care agreed that termination of employment would mean either "termination of employment pursuant to Section 12" of the amended employment agreement <u>or</u> "any situation where" Women's Care and Potter "reasonably anticipated that no further services would be performed after a certain date."

In the termination letter, Women's Care specifically stated that it was exercising its right to invoke the 90-day notice period in Section 12.1 of the amended employment agreement and that, as a result, Potter's employment with Women's Care would be deemed "terminate[d] effective December 22, 2021" -- or 90 days after September 23, 2021 (and this statement was made before the commencement of these actions). According to Women's Care, per the terms of the amended employment agreement, it paid Potter her normal compensation until she began working for another medical practice on November 22, 2021, at which point Potter was no longer an employee of Women's Care. Thus, under these circumstances, it appears that Potter's employment with Women's Care effectively ended on November 22, 2021, and it would, therefore, be logical to conclude that any statements or actions that occurred before that date could be subject to arbitration.

Care are subject to arbitration. We therefore reverse the trial court's order denying Women's Care's motion to compel arbitration, and we remand the cause for an order or proceedings consistent with this opinion.

In appeal no. SC-2022-0707, we hold that Potter's tort claims against the WC employees are subject to arbitration. We therefore reverse the trial court's order denying their motion to compel arbitration, and we remand the cause for an order or proceedings consistent with this opinion.

SC-2022-0706 -- REVERSED AND REMANDED.

SC-2022-0707 -- REVERSED AND REMANDED.

Parker, C.J., and Wise, Sellers, and Stewart, JJ., concur.