Serra Toyota, Inc., and Donnell St. Charles appeal from the trial court's order denying their motion to compel arbitration. We reverse and remand.
In November 2001, Rebecca Johnson purchased a used 1999 Toyota Avalon automobile *Page 1127 
and a used 1992 Toyota Camry automobile from Serra Toyota. St. Charles was the salesperson who sold the automobiles to Johnson. Johnson executed a contract entitled a "Retail Buyers Order" in connection with the purchase of each vehicle. Those contracts contained identical arbitration agreements. The arbitration agreements state:
 "The Undersigned Purchaser [Johnson] and Seller [Serra Toyota], voluntarily WAIVE ANY RIGHT TO A JURY TRIAL, and further agree as follows:
 "(1) That the motor vehicle described in this sale document has been heretofore traveling in interstate commerce and has an impact upon interstate commerce.
 "(2) That in the event of any dispute(s), between the parties hereto or in the event of any dispute(s) arising out of or related to this contract, (including but not limited to the terms of the agreement, the condition of the motor vehicle sold, the conformity of the motor vehicle sold to the contract, the representations, promises, undertakings or covenants made by the Seller, Inc. in connection with the sale of the motor vehicle, or otherwise dealing with a motor vehicle; any terms of financing in connection therewith, or any terms of any credit life and/or disability insurance purchased simultaneously herewith, or extended service or maintenance agreements), that Seller, and the purchaser agree to submit such dispute(s) to binding arbitration, pursuant to the provisions of 9 U.S.C. § 1, et. seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama.
 "(3) That in the event any dispute arises between purchaser and seller, its officers, agents and employees, the said dispute will be submitted to binding arbitration pursuant to 9 U.S.C. et. seq. and according to the commercial rules of the American Arbitration Association then existing in Alabama."
(Capitalization in original.)
Johnson says that when she purchased the automobiles, she told St. Charles specifically that she was not interested in purchasing an automobile that had previously been involved in an accident; she says that she was told that the automobiles she was purchasing were in good condition and that they had never been involved in an accident. According to Johnson's complaint, five days after she purchased the automobiles she took them to have repairs performed and discovered that both automobiles "had been seriously damaged in accidents prior to her purchase of said automobiles and this fact was not disclosed to [her] at the time of purchase."
Johnson sued Serra Toyota and St. Charles, alleging fraudulent misrepresentation, fraudulent suppression, breach of contract, conspiracy, and negligent or wanton hiring, training, and supervision. Serra Toyota moved to compel arbitration, supporting its motion with an affidavit from Paul Nuckles, its finance manager. Nuckles stated in his affidavit that both automobiles purchased by Johnson were manufactured outside Alabama; that Johnson received a "Toyota Certified Used Vehicle Limited Warranty" on the 1999 automobile provided through Fidelity Warranty Services, Inc., located in Florida;[1] *Page 1128 
that before Johnson purchased the automobiles, Serra Toyota checked the Camry's vehicle history with an Internet service called "Autocheck," which reflected that through January 1997 the Camry had been owned by someone in Illinois; that Serra Toyota acquired the Avalon from Regions Bank, paying for the automobile with a check sent to Regions Bank's office in Pittsburgh, Pennsylvania; and that Serra Toyota obtained a credit report on Johnson from "Trans Union" in Chester, Pennsylvania. Nuckles attached to his affidavit copies of both sales contracts, the warranty on the Avalon, the Autocheck report on the Camry, and a copy of the check Serra Toyota had written to Regions Bank to pay for the Avalon. St. Charles joined in Serra Toyota's motion to compel arbitration.
In response to the motion to compel arbitration, Johnson filed only a brief; she did not submit any evidence. She stated in her brief that she and both defendants were all Alabama residents. She argued that she should not be compelled to arbitrate her claims against Serra Toyota and St. Charles because, she argued, her transactions did not have a substantial effect on interstate commerce and because the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), "does not preempt state contract defenses." In support of her argument that her transactions did not substantially affect interstate commerce, Johnson relied upon this Court's decision in Sisters of the Visitation v. CochranPlastering Co., 775 So.2d 759 (Ala. 2000). Johnson also argued that the arbitration provision in the contracts she signed was unconscionable because, she says, she did not have a meaningful choice, the arbitration agreements did not meet the basic elements of a contract, the American Arbitration Association is biased in favor of institutions that form its client base, and the arbitration clause is "buried" in the documents she signed.
The trial court concluded that the vehicles were sold to Johnson in "a strictly intrastate transaction" and that "[f]or an intrastate transaction to `involve' interstate commerce within the meaning of the FAA, the defendants must have introduced evidence proving that the plaintiff's purchase of the vehicle involved a transaction that substantially affected interstate commerce." Based on that conclusion, the trial court denied the motion to compel arbitration.
Serra Toyota and St. Charles argue that Johnson's purchase of the automobiles substantially affected interstate commerce. They also argue that if those transactions did not substantially affect interstate commerce, this Court should overrule Sisters of the Visitation. Finally, Serra Toyota and St. Charles argue that Johnson did not meet her burden of proving that the arbitration agreements are unconscionable. Johnson argues on appeal, as she did in the trial court, that Serra Toyota and St. Charles did not demonstrate that the transactions at issue substantially affected interstate commerce and that the arbitration agreements are not enforceable because, she says, she did not have a meaningful choice in that she could not purchase an automobile without signing an arbitration agreement, because, she says, the arbitration agreements in this case are unconscionable, and because, she says, the arbitration agreements do not meet the basic elements of a contract.
 "This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel *Page 1129 
arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. '[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)."
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted).
In Citizens Bank v. Alafabco, Inc., 539 U.S. ___, ___, 123 S.Ct. 2037,2040 (2003), the United States Supreme Court rejected the test set out inSisters of the Visitation, supra, stating:
 "We have interpreted the term `involving commerce' in the FAA as the functional equivalent of the more familiar term `affecting commerce' — words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. . . .
". . . .
 ". . . Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.' Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)."
Under Citizens Bank, Serra Toyota and St. Charles were required to prove only that Johnson's purchase of the subject automobiles involved interstate commerce, in addition to proving the existence of a contract requiring arbitration. After reviewing the affidavit and exhibits submitted by Serra Toyota and St. Charles, we conclude that they introduced sufficient proof of the existence of contracts requiring arbitration and that the transactions involved interstate commerce. SeeGayfer Montgomery Fair Co. v. Austin, [Ms. 1012159, June 27, 2003]870 So.2d 683 (Ala. 2003).
The burden then shifted to Johnson to present evidence indicating that the arbitration agreements were invalid. Johnson did not submit any evidence to the trial court. She filed only a brief in which she argued that the agreements were unconscionable, but she did not introduce any evidence to support her arguments. In contending that an arbitration clause is unconscionable, a party opposing a motion to compel arbitration "must submit evidence in some form in order to preserve that contention for appellate review." Fleetwood Enters., 784 So.2d at 281 (Lyons, J., concurring specially). "Statements in motions and briefs are not evidence to be considered by the trial court in ruling on a motion to compel arbitration." Tefco Fin. Co. v. Green, 793 So.2d 755, 760 n. 6 (Ala. 2001). Because Johnson did not submit evidence in support of her argument that the arbitration agreements are unconscionable, she did not preserve that argument for appellate review.
We therefore reverse the order of the trial court denying arbitration and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Although Nuckles's affidavit states that Johnson received a warranty on "the 1999 Toyota Camry," the 1999 automobile Johnson purchased was an Avalon, and the copy of the warranty attached to the affidavit reflects that the Avalon was the automobile covered by the warranty. *Page 1130