Dan Wachtel Ford, Lincoln, Mercury, Inc., the defendant in an action pending in the Limestone Circuit Court, appeals from the denial of its motion to compel Tania Modas to arbitrate her claims against it. We reverse and remand.
 Facts
On October 4, 2001, Tania Modas entered into a contract to purchase a 1999 Ford Explorer sport-utility vehicle from Dan Wachtel Ford. She traded in her 1999 Mercury Cougar automobile and signed a retail installment contract that named Fairlane Credit, L.L.C., as the lienholder of the Explorer. She also signed a separate document entitled "Arbitration Agreement," a document entitled "Sold Vehicle" (referred to by the parties as a "delivery receipt"), and other documents necessary to complete the transaction (title applications, warranty disclosures, credit application, etc.). Modas left her Cougar with Dan Wachtel Ford and drove away from the dealership in the Ford Explorer.
According to Modas, Dan Wachtel Ford later contacted her to inform her that she *Page 289 
needed to return to the dealership to complete more paperwork. On October 5, 2001, Modas returned to the dealership and signed another retail installment contract. This second retail installment contract included a $1,500 charge for an extended service plan and listed Ford Motor Credit Co. as the lienholder. Modas again left the dealership in the Ford Explorer.
Modas alleges that a month later she had not received a payment book from Ford Motor Credit and that she telephoned Ford Motor Credit inquiring where she should send her payments. She learned that Ford Motor Credit had declined her credit application and that her credit application had been returned to Dan Wachtel Ford.
Modas notified Dan Wachtel Ford that she had learned from Ford Motor Credit that her credit application had been denied; the dealership then attempted to sell Modas another vehicle, older than the Explorer, on which it believed she could obtain financing. Modas refused to accept the older vehicle and requested that Dan Wachtel Ford return the 1999 Cougar to her. According to Dan Wachtel Ford, Modas's Cougar had been sold. Modas then offered to make payments on the Explorer to Dan Wachtel Ford but Dan Wachtel Ford refused to accept those payments, claiming that the denial of her credit application had rendered the retail installment contract void. Modas insisted she would not return the Explorer until Dan Wachtel Ford returned her Cougar. Despite the intervention of Modas's attorney, Dan Wachtel Ford and Modas could not resolve this dispute.
Dan Wachtel Ford had the Explorer repossessed and initiated criminal charges against Modas for theft by deception. Modas was arrested in Lauderdale County and was transported to the Limestone County jail, where she was held until she could post bond. The Limestone Circuit Court eventually nol-prossed the criminal charges against Modas.
On May 21, 2003, Modas sued Dan Wachtel Ford in the Lauderdale Circuit Court. In her complaint, she alleged conversion of her 1999 Cougar, trespass to her personal property, malicious prosecution, and abuse of process. On June 6, 2003, Dan Wachtel Ford filed a motion to transfer the action to the Limestone Circuit Court and a motion to compel arbitration of Modas's claims. The motion to transfer was granted.
In support of its motion to compel arbitration, Dan Wachtel Ford asserted that the transaction underlying the dispute involves interstate commerce. The president of the dealership filed an affidavit in which he attested to the effects an automobile business like Dan Wachtel Ford has on interstate commerce. In its motion to compel, Dan Wachtel Ford also asserted that as part of the transaction underlying the dispute the parties signed a stand-alone arbitration agreement and that the claims asserted by Modas fall within the scope of that arbitration agreement.
Modas opposed the motion to compel arbitration. She argued that Dan Wachtel Ford had not established the existence of a contract between the parties because, she argues, the documents she signed as part of the purchase provided that the contract would be void if Dan Wachtel Ford could not obtain financing for her purchase. In support of her argument, Modas relied upon the express language of the retail buyer's order, the retail installment contract, and the delivery receipt. She also argued that even if the stand-alone arbitration agreement were binding, her claims fell outside the scope of that agreement. Finally, Modas argued that Dan Wachtel Ford had not met its burden of *Page 290 
proving that the transaction affected interstate commerce.
On August 11, 2003, the trial court denied Dan Wachtel Ford's motion to compel arbitration by a notation on the case action summary. The trial court stated no reasons for its order.
Dan Wachtel Ford appeals from the trial court's August 11, 2003, order, asserting the following:
 "I. The transaction at issue does substantially affect interstate commerce.
 II. Valid contracts exist between [Modas] and Dan Wachtel [Ford].
 "III. The language of the Arbitration Agreement at issue is sufficiently broad in scope to cover [Modas's] claims.
 "IV. An arbitrator should interpret the application of the language `null and void' as provided in one of the contracts at issue."
(Appellant's Brief at p. viii.)
 Standard of Review
"This Court reviews de novo the denial [or the grant] of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough,779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin.Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. `After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim BurkeAutomotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)."
Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted).
 Discussion
We must address whether Dan Wachtel Ford met its burden in establishing the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce.
 I. The Existence of a Contract Calling for Arbitration
We note that Modas signed several documents as part of her purchase of the Explorer from Dan Wachtel Ford. We construe all of those documents as a single contract. See ANCO TV Cable Co.v. Vista Communications Ltd. P'ship I, 631 So.2d 860 (Ala. 1993) (where more than one writing is involved in a single transaction, the court interprets the writings together); Pacific Enters. OilCo. (USA) v. Howell Petroleum Corp., 614 So.2d 409 (Ala. 1993) (two or more instruments executed contemporaneously by the same parties in reference to the same subject matter constitute one contract and should be read together in construing the contract).
Here, the retail buyer's order, the retail installment contract, the delivery receipt, and the arbitration agreement all constitute one contract. The retail buyer's order states:
 "This order shall not become binding until accepted by dealer or its authorized representative and in the event of a time sale dealer shall not be obligated to sell until approval of the terms hereof is given by a bank or finance company willing to purchase a retail installment contract between the parties. . . ."
That document also provided that "any dispute arising of [sic] the contracts entered *Page 291 
into by the parties of and concerning the within described motor vehicle" shall be submitted to arbitration.
The retail installment contract signed by Modas as a part of the transaction stated:
 "You the Buyer . . . may buy the vehicle described below for cash or on credit. . . . By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract."
Additionally, the delivery receipt executed as a part of the transaction provides:
 "If a retail installment contract is executed as a part of this sales transaction, then buyer and seller intend that this contract be assigned by seller. In the event seller is unable to assign this contract within 3 days of the date hereof, this contract shall be null and void and Buyer, immediately upon notice by Seller, shall do one of the following: 1. Purchase the vehicle from Seller for the cash price thereof set forth therein; or 2. Return the vehicle described herein to seller and pay to Seller the cost of repair or any damage occurring to the vehicle while in the Buyer's possession."
Finally, the parties executed a stand-alone arbitration agreement, which provided:
 "In connection with the undersigned's acquisition of the below described motor vehicle by lease, purchase or otherwise, on or about the date shown below, the undersigned and the Dealer mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of or relating to or concerning all of the contracts and agreements entered into by the parties of and concerning the below described motor vehicle, and business relationships resulting therefrom, as follows:. . . . The undersigned agree that all disputes not barred by the applicable statute of limitations, whether denominated as a claim, counter-claim, cross-claim or third-party claim, resulting from or arising out of or relating to or concerning the transaction entered into including but not limited to the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services acquired by the undersigned, the past, present and future condition of the motor vehicle; the conformity of the motor vehicle to any contract description; the representations, promises, undertakings, warranties or covenants made by Dealer in connection with the undersigned's acquisition of the motor vehicle, or otherwise dealing with the motor vehicle; any lease terms or the terms of credit and/or financing in connection therewith;. . . . shall be submitted to BINDING ARBITRATION. . . ."
These documents together constitute one agreement between Dan Wachtel Ford and Modas.
In this case, Dan Wachtel Ford was unable to obtain financing for Modas's purchase of the Explorer. Based on the express language of the various documents, the retail installment contract became void when Dan Wachtel Ford was unable to obtain financing. However, the remainder of the parties' agreement, which consists of the buyer's order, the delivery receipt, and the stand-alone arbitration agreement, remained in effect. The agreement remaining included the provisions of the delivery receipt, which required Modas, in the event Dan Wachtel Ford was unable to obtain financing, either to purchase the Explorer for cash or to return the Explorer to Dan Wachtel Ford; this remaining agreement also included the parties' agreement to arbitrate any disputes resulting from or arising out of or relating to or *Page 292 
concerning the purchase transaction. Accordingly, we conclude that Dan Wachtel Ford met its burden in establishing the existence of a contract calling for arbitration.
 II. Interstate-Commerce Issue
This Court has previously recognized that the purchase of a used automobile from an automobile dealer was a transaction that involved interstate commerce. In Serra Toyota, Inc. v. Johnson,876 So.2d 1125 (Ala. 2003), this Court held that an automobile dealer met its burden of establishing that the buyer's purchase of a used automobile involved interstate commerce. In that case, the dealer submitted evidence indicating that the automobile was manufactured outside Alabama; that the buyer purchased an extended warranty provided by an out-of-state company; that the previous owner of the vehicle lived outside Alabama; and that the dealer had purchased the automobile from an out-of-state bank. Based on this evidence, the Court concluded that Serra Toyota had met its burden in establishing that the transaction affected interstate commerce. See also Wolff Motor Co. v. White,869 So.2d 1129 (Ala. 2003); Jim Burke Auto., Inc. v. McGrue,826 So.2d 122 (Ala. 2002); Anniston Lincoln Mercury Dodge v.Conner, 720 So.2d 898 (Ala. 1998).
Dan Wachtel Ford asserts that this particular transaction affected interstate commerce; Dan Wachtel Ford also asserts that the automobile industry in general affects interstate commerce. Dan Wachtel Ford presented evidence indicating that the Explorer was manufactured outside Alabama and that it had traveled in interstate commerce. Dan Wachtel Ford stated that, in attempting to obtain financing for Modas, it contacted out-of-state corporations and obtained credit information on Modas from Equifax Services, Inc., an out-of-state company. Additionally, Dan Wachtel Ford points out that Modas contracted to purchase an extended service contract on the Explorer from Fidelity Warranty Services, Inc., a Florida corporation. Dan Wachtel Ford also asserts that various aspects of its business are regulated by federal law.
In her brief to this Court, Modas does not respond to these assertions. Based on the quality of the evidence offered and on Modas's failure to rebut any of that evidence, we conclude that the parties' transaction affected interstate commerce. SeeCitizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037,156 L.Ed.2d 46 (2003).
Thus, Dan Wachtel Ford has met its burden in establishing the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. The burden then shifted to Modas to present evidence indicating that the arbitration agreement is invalid or that it does not apply to this dispute. Fleetwood Enters., Inc. v.Bruno, supra.
 III. Modas's Arguments
Modas argues that, when the retail installment contract could not be assigned, the entire contract, i.e., all the related documents, became void. As authority for her argument, she relies upon Ex parte Payne, 741 So.2d 398 (Ala. 1999). However, the contract language at issue in Ex parte Payne is distinguishable from that here.
In Ex parte Payne, Payne attempted to buy a vehicle from Jay Pontiac GMC Truck Mitsubishi, Inc. She signed various documents, including a retail purchase order, and took the vehicle home. Included in the language of the purchase order was an agreement to arbitrate. The purchase order also included the following language: "[T]he Purchaser(s) [sic] offer is not accepted and the transaction is not consummated *Page 293 
until (a) approved in writing by Dealer and a responsible Bank or Finance Company. . . ." 741 So.2d at 400 (emphasis omitted).
Payne's credit application was subsequently declined, and a dispute arose between Jay Pontiac and Payne regarding the return of the vehicle. Jay Pontiac pursued legal action to recover the vehicle, which was eventually returned to Jay Pontiac by order of the trial court.
Payne counterclaimed, alleging breach of contract, fraud and deceit, suppression, conversion, fraud in the inducement, and negligence. Jay Pontiac filed a motion to compel arbitration. The trial court granted that motion.
Payne filed a petition for writ of mandamus, and this Court held that the purchase contract was not binding because the condition precedent contained in that contract had not been fulfilled. The Court held that the language "the Purchaser(s) [sic] offer is not accepted and the transaction is not consummated until (a) approved in writing by Dealer and a responsible Bank or Finance Company" was a condition precedent to the formation of a binding contract. Because it was undisputed that Payne's credit application had not been approved, the condition precedent had not occurred and, by the express terms of the retail purchase order, no binding contract was created. Therefore, the Court held, Jay Pontiac was not entitled to compel arbitration of Payne's claims.
In this case, however, assignment of the retail installment contract was not a strict condition precedent to continuation of the parties' agreement in this case as it was in Ex partePayne, supra. Dan Wachtel Ford and Modas agreed that, if the retail installment contract could not be assigned, that document would be void, and, upon the happening of that event, Modas either would pay cash for the Explorer or would return it. The parties in Ex parte Payne made no such agreement. Therefore, Modas's reliance upon Ex parte Payne is misplaced.
Modas next argues that the language of the arbitration agreement is not sufficiently broad in scope to encompass her claims. We reject this argument. Modas sued Dan Wachtel Ford alleging conversion of her 1999 Cougar, trespass to her personal property, malicious prosecution, and abuse of process. The claims alleging conversion and trespass arise directly out of her purchase transaction with Dan Wachtel Ford; Modas's claims of malicious prosecution and abuse of process arise out of actions taken by Dan Wachtel Ford upon Modas's refusal to return the Explorer. All these claims are "claim[s] . . . resulting from or arising out of or relating to or concerning the transaction entered into" and, therefore, they are encompassed within the scope of Modas's agreement to arbitrate.
 Conclusion
For these reasons, we reverse the trial court's order denying Dan Wachtel Ford's motion to compel arbitration. We remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BROWN, HARWOOD, and WOODALL, JJ., concur.
SEE and LYONS, JJ., concur specially.
HOUSTON and JOHNSTONE, JJ., dissent.