[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 926 
Richard C. Adcock and Christina D. Adcock appeal from an order compelling arbitration of a dispute between them and Adams Homes, LLC ("Adams"), and Bonded Builders Home Warranty Association of Alabama, Inc. ("Bonded Builders"). We reverse and remand.
This dispute arose out of the Adcocks' purchase of a new house in Spanish Fort; the house was built by Adams, an Alabama company. On June 27, 2001, the date of the closing, the Adcocks received a number of documents relevant to this appeal. In particular, they received from Adams a written warranty covering "any defects in . . . material or workmanship . . . furnished by [Adams]." They also received a 10-year written warranty from Bonded Builders, an Alabama corporation ("the home warranty agreement"). That home warranty agreement was contained in a booklet entitled, "Builders Warranty Documents" ("the warranty booklet").
The warranty booklet contained the following pertinent provisions:
 "SECTION I: COVERAGE
 "In consideration of the premium received and subject to provisions of this certificate, [Adams] and [Bonded Builders] agree to the terms and conditions that follow herein. [Bonded Builders] is the warrantor under this limited warranty and will meet [Adams's] obligations to the [Adcocks] for covered deficiencies if [Adams] is unable or unwilling to comply with the assurances, conditions and standards as set forth herein.
 ". . . .
 "SECTION IV: CONCILIATION
 "Conciliation: If [the Adcocks] and [Adams] disagree on any claimed defective item or resulting repairs in accordance with this warranty . . ., [Adams] or [the Adcocks] may request third party conciliation. In such cases [Adams] or [the Adcocks] must contact [Bonded Builders]. [Bonded Builders] will either complete or mail to the party requesting conciliation a Claimed Defects Form (C-114). The [Bonded Builders] phone number is listed in this document.
The Claimed Defects Form should be returned to [Bonded Builders] as soon as possible. . . . While a Claimed Defects Form is required, a [Bonded Builders] representative will attempt to remedy the problem even before formal conciliation. If the [Bonded Builders] representative is unable to quickly resolve the problem through informal procedures, [Bonded Builders] will arrange a conciliation meeting at the home or unit location, with the [Adcocks], or their representative, [Adams], or representative and a conciliator assigned by [Bonded Builders]. . . . If a decision is not made *Page 927 
at the meeting, the conciliator will inform both parties of the decision on the claimed items in writing. If accepted in total, [Adams] will comply with the decision and correct listed items. . . . If a claim decision cannot be resolved informally or through formal conciliation, either party may request a meeting of a `Claim Review Group' consisting of the conciliator, and third party representatives for the [Adcocks] and [Adams]. If the [Adcocks] or [Adams] do not agree to the Claim Review Group meeting and if either party does not accept in total the final decision of the conciliator, they should advise [Bonded Builders] in writing of their non-acceptance. When a claim decision cannot be resolved between the parties, arbitration should be requested.
 "SECTION V: ARBITRATION
 "If, after conciliation, the [Adcocks] and [Adams] disagree on any claimed defective items or resulting repairs in accordance with this warranty . . ., [Adams] or [the Adcocks] may request an impartial third party arbitration. This request should be made only after all attempts at conciliation between the disagreeing parties have failed and should precede
litigation attempted by either party on items that are specifically included in this warranty. Any and all expenses including, but not limited to, attorney and court costs, other than any direct fee for arbitration, will not be construed as an arbitration expense under this warranty and it is not herein intended that these incidental expenses are necessarily [Adams's] or [Bonded Builder's] liability. The dispute settlement process provided herein shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warranty documents or to seek relief for any dispute arising out of this warranty. In the event the [Adcocks] use litigation, no additional warranty work will be performed until the litigation has concluded.
 ". . . .
 "SECTION VIII: GENERAL CONDITIONS
 ". . . .
 "C. Dispute Settlement: Should [Adams] or [the Adcocks] disagree with [Bonded Builders] or its representative's decision, the contesting party may call for a conciliation and claim review group with [Bonded Builders]. Should a disagreement still exist following conciliation, the contesting party will request an arbitration to be conducted by an impartial third party arbitrator, chosen by [Bonded Builders]. This process shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warranty documents or to seek relief for any dispute arising out of this warranty.
 ". . . .
 "I. Attorney's Fees and Court Costs: In the event of any litigation arising out of or under this Warranty, the prevailing party shall be entitled to recover its reasonable attorney's fees and court costs.
 "J. General: Should any provisions of this contract be deemed by a court of competent jurisdiction to be unenforceable, that determination will not affect the enforceability of the remaining provisions. This Warranty is to be binding upon [Adams], the [Adcocks], their heirs, *Page 928 
executors, administrators, successors and assigns."
(Emphasis added.)
Also at the closing, Adams and the Adcocks executed a "Buyer's and Seller's Acknowledgment" ("the acknowledgment"), which contained the following arbitration clause:
 "The claim procedure described in the Home Warranty Agreement, including the conciliation and arbitration procedure, shall apply to any controversy between [Adams] and [the Adcocks] arising from this transaction and any claim made by [the Adcocks] concerning any warranty obligation covered by the Home Warranty Agreement. In the absence of a Home Warranty Agreement, or in the event a controversy arises between the parties which is not covered by the Home Warranty Agreement, all such con[troversies] shall be submitted to binding arbitration in accordance with the American Arbitration Association. The rules of the American Arbitration Association under its Expedited Home Construction Arbitration rules shall govern the conduct of the arbitration."
(Emphasis added.)[1]
After the Adcocks took possession of the house, they allegedly began to experience drainage and flooding problems on the property. They contacted Adams and Bonded Builders, and the parties attempted to resolve the problems through "conciliation." When the conciliation process failed, the Adcocks sued Adams and Bonded Builders. The complaint averred that, among other things, Adams and Bonded Builders "breached their express warranty with the Adcocks by failing to provide proper grading and site work to ensure proper drainage away from their house," and by "failing to remedy [the] drainage problems."
Adams and Bonded Builders each filed a motion to "compelbinding arbitration" (emphasis added), based on the arbitration provisions in the home warranty agreement. On February 11, 2004, the trial court entered an order stating, in pertinent part: "Motions to compel arbitration granted. This case is transferred to the administrative docket, pending resolution in arbitration." From that order, the Adcocks appealed.
Preliminarily, the Adcocks correctly point out that "[t]he trial court granted the Motions to Compel Arbitration without clarifying whether arbitration was binding." Adcocks' brief, at 14 (emphasis added). Nevertheless, the parties seem to assume
that the court ordered binding arbitration. Indeed, both defendants expressly moved for binding arbitration, and the trial court granted their "motions to compel arbitration." Also, the order granting the motions clearly contemplated "resolution in arbitration." (Emphasis added.) Therefore, we shall address the issues as though the arbitration ordered was, in fact, binding.
In that connection, "[t]he Adcocks contend that the contract at issue does not contain a binding, mandatory arbitration clause and that the transaction is not one involving interstate commerce." Adcocks' brief, at 18. This appeal, therefore, presents three issues — (1) whether this transaction involves interstate commerce; (2) whether the contract mandates arbitration; *Page 929 
and, if so, (3) whether it mandates binding arbitration.
 I. Interstate Commerce
"We review de novo the trial court's ruling on a motion to compel arbitration. Green Tree Fin. Corp. v. Vintson,753 So.2d 497, 502 (Ala. 1999)." Massey Automotive, Inc. v. Norris,895 So.2d 215, 217 (Ala. 2004). "`A "party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce,"'" Wolff Motor Co. v.White, 869 So.2d 1129, 1131 (Ala. 2003) (quoting Tefco Fin. Co.v. Green, 793 So.2d 755, 758 (Ala. 2001)), within the meaning of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"). This is so, because the FAA makes specifically enforceable a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract or transaction." 9 U.S.C. § 2.
"[T]he term `involving commerce' in the FAA [is] the functional equivalent of the . . . familiar term `affecting commerce' — words of art that ordinarily signal the broadest permissibleexercise of Congress' Commerce Clause power." Citizens Bank v.Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46
(2003) (emphasis added). "Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'" 539 U.S. at 56-57, 123 S.Ct. 2037
(quoting Mandeville Island Farms, Inc. v. American Crystal SugarCo., 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)). Nevertheless, "[t]he party moving for arbitration must "`produce some evidence which tends to establish its claim"'" that the transaction involved interstate commerce. White,869 So.2d at 1131 (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260,1265 (Ala. 1995) (opinion on application for rehearing)).
In addition to the warranty booklet, Bonded Builders produced an affidavit, which stated, in pertinent part:
 "1. I am Susan Maas, Director of Claims for and employed by [Bonded Builders], 2201 NW Corporate Blvd., Suite 100, Boca Raton, Florida 33431.
 ". . . .
 "3. I affirm that the nature of business of [Bonded Builders] is to operate as a home warranty business.
 "4. I affirm that builders in the State of Alabama that enroll new homes are covered by a Limited Warranty provided by [Bonded Builders].
 "5. I affirm that the premiums paid to enroll new homes with [Bonded Builders] that are built in the State of Alabama are transferred to the State of Florida.
 "6. I affirm that these premiums are deposited into a bank account located in Palm Beach County, Florida for and on behalf of [Bonded Builders]."
(Emphasis added.) Thus, Adams and Bonded Builders contend that this transaction involves interstate banking and, consequently, interstate commerce.
Additionally, Adams contends that "[t]he services provided under the [Home] Warranty Agreement originate at the operation center in Boca Raton, Florida." Adams's brief, at 15. Similarly, Adams points out that the warranty booklet "directed inquiries about the warranty, or claims presented under the warranty, to the claim center in Boca Raton, Florida." Adams's brief, at 14. *Page 930 
Indeed, it is clear on the face of the warranty booklet that the warranty booklet was designed and printed by "Accent Graphics" in Pompano Beach, Florida. It is similarly clear that the telephone number by which either Adams or the Adcocks could begin the conciliation procedure was the number of the Bonded Builders "operations center" in Boca Raton, Florida. Once initiated from Alabama, that procedure required certain action in Florida, and contemplated a series of communications among the parties in both states. Specifically, Bonded Builders was obligated to mail to the Alabama party a "Service Request Form" to be completed in Alabama and returned to Florida by the initiating party.
Although it is not clear from the record whether all of Bonded Builders' actions after conciliation was commenced were directed from Florida, it is clear that Bonded Builders' initial responsibilities in response to a conciliation requestoriginated in Florida. Consequently, the performance of the home warranty agreement could not have been accomplished withoutthe direct involvement of the Florida-based operations center.
These facts demonstrate that the home warranty agreement "involves a transaction affecting interstate commerce," White, supra, within the meaning of the FAA. We next consider, therefore, whether the contract, in fact, mandates arbitration.
 II. Does the Home Warranty Agreement Mandate Arbitration?
The Adcocks' argument under this heading can be summed up as follows:
 "The language . . . in the [home warranty agreement] does not state that arbitration is `mandatory.' The clear language of the contract states that arbitration `may' be requested — in fact, it appears that arbitration `may' be requested or
conciliation `may' be requested. The contract language does not require the Adcocks (or Adams) to do both — conciliation or arbitration may be requested. . . .
 ". . . .
 "Bonded Builders chose the word `may' to use in the arbitration clause. The word `may' is not mandatory in nature, but rather is permissive."
Adcocks' brief, at 20-21 (emphasis added). The Adcocks contend that, because the conciliation process has already been exhausted without success, they are now free to litigate their claims.
Insisting that arbitration is mandatory, Adams and Bonded Builders rely on those portions of the home warranty agreement, namely, §§ V and VIII. C., providing that "`[the dispute settlement] process . . . shall be a condition precedent to thecommencement of litigation by any party.'" Bonded Builders' brief, at 9 (emphasis added). More specifically, Bonded Builders states: "The provision specifically states that it shall be a condition precedent to litigation. The Adcocks would have the Court twist this meaning to allow them to escape arbitration, clearly not the intent of the contract. . . ." Id. (emphasis in original).
Adams and Bonded Builders also rely on Karl StorzEndoscopy-America, Inc. v. Integrated Medical Systems, Inc.,808 So.2d 999 (Ala. 2001), in which this Court rejected an argument essentially identical to the Adcocks' argument. The issue in that case arose from provisions stating:
 "`A. Except as otherwise specifically provided for herein, any dispute relating to whether a material breach of this agreement has occurred by any party . . . shall initially be attempted to be resolved by the involved parties through non-binding mediation to be commenced *Page 931 
within 30 days following expiration of the period for cure of a noticed breach. . . .
 "`B. If within 30 days after the commencement of mediation, a resolution of the dispute has not been achieved, the dispute may thereafter be submitted by any party to binding arbitration under the commercial rules of the American Arbitration Association then in effect. . . .'"
808 So.2d at 1009-10 (emphasis in Karl Storz).
The arbitration opponent in that case argued that the contract's use of the word "may" rendered arbitration optional, rather than mandatory. This Court concluded that the argument was "contrary to logic and to the weight of authority."808 So.2d at 1010. In particular, we said: "`[T]he use of the word "may" in an arbitration agreement does not imply that the parties to the agreement have the option of invoking some remedy other than arbitration.'" 808 So.2d at 1011 (quoting Held v. National R.R.Passenger Corp., 101 F.R.D. 420, 424 (D.D.C. 1984)). Indeed, "`[i]f the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include . . . the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration.'" Id. (quoting Austin v. Owens-Brockway GlassContainer, Inc., 78 F.3d 875, 879 (4th Cir. 1996)) (emphasis added).
To be sure, the resolution of Karl Storz turned onCalifornia law. Nevertheless, our analysis in that case essentially mirrored the analysis we applied one month earlier inCeltic Life Insurance Co. v. McLendon, 814 So.2d 222 (Ala. 2001). The arbitration clause in Celtic Life provided: "`Controversies . . . may be resolved by arbitration,'" id.
at 224 (emphasis added), and the party opposing arbitration argued "that the use of the word `may,' instead of the word `shall,' render[ed] the clause unenforceable if either party to the agreement object[ed] to arbitration." Id. Rejecting that argument, we quoted much of the same authority, and applied the same rule, that we did in Karl Storz. Thus, the rule in Alabama as to the significance of the word "may" in the arbitration context simply mirrors the rule we set forth in Karl Storz.
Thus, in the context of an arbitration clause made specifically enforceable by the FAA, use of the word "may" does not render arbitration an optional means of dispute resolution.
Moreover, the construction of that term urged by the Adcocks is inconsistent with other key provisions of the home warranty agreement, which unambiguously make arbitration mandatory. Intwo sections, the home warranty agreement states that the "dispute settlement process" — which includes arbitration — "shall be a condition precedent to the commencement oflitigation by any party." (Emphasis added.) A condition precedent is "one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Black's Law Dictionary 293 (6th ed. 1990) (emphasis added). By definition, no right to litigate can accrue before the consummation of the arbitration procedure, where arbitration is requested by any party to the home warranty agreement. Arbitration in this case is, therefore, mandatory.
It does not follow, however, that because arbitration is mandatory it is necessarily binding.[2] Thus, we next consider the Adcocks' *Page 932 
argument that the home warranty agreement does not call forbinding arbitration.
 III. Is Arbitration Binding?
In support of their argument, the Adcocks cite a number of provisions of the home warranty agreement. This they are entitled to do, because "`[u]nder general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract.'" Lewis v. Oakley,847 So.2d 307, 327 (Ala. 2002) (quoting Homes of Legend, Inc. v.McCollough, 776 So.2d 741, 746 (Ala. 2000)) (emphasis added). "`The agreement must be construed in its entirety, and a single provision or sentence is not to be disassociated from others having reference to the same subject matter.'" Ex parteUniversity of South Alabama, 812 So.2d 341, 345 (Ala. 2001) (quoting Yu v. Stephens, 591 So.2d 858, 859 (Ala. 1991)).
The Adcocks first rely on that portion of §§ V and VIII.C. onwhich Adams and Bonded Builders relied in arguing that arbitration is mandatory, namely, the clause providing that "`[the dispute settlement] process . . . shall be a conditionprecedent to the commencement of litigation by any party.'" (Emphasis added.) In that connection, they argue:
 "The intent of providing the Adcocks with a right to proceed with litigation could not be more obvious given the fact that [the home warranty agreement] plainly state[s] that the `dispute settlement process' is only a `condition precedent' to filing a civil action. This very language makes it obvious that arbitration was never contemplated or intended to be binding on any party in this case."
Adcocks' brief, at 23-24 (emphasis in original; citation to the record omitted).
We agree with this argument. "Precedent," as used in the home warranty agreement, as we have already discussed, simply means "before" litigation. It does not mean "in lieu of," or "in place of," litigation. Thus, the parties obviously contemplated the possibility of litigation after failure of the dispute settlement process, which includes arbitration.
This conclusion is buttressed, as the Adcocks further argue, by the manner in which the home warranty agreement deals with attorney fees and court costs, depending on whether the dispute was arbitrated or litigated. Specifically, § V provides that attorney fees and court costs will not be regarded as "arbitration expense," and will not "necessarily" be deemed the liability of Adams or Bonded Builders. Section VIII.I., by contrast, provides that the "prevailing party" in litigation
"shall be entitled to recover its reasonable attorney's fees and court costs." Because the parties contemplated a different disposition of court costs and attorney fees, depending on the forum in which the dispute was ultimately resolved, they could hardly have intended arbitration to be the final andexclusive mode of dispute resolution.
Although the acknowledgment provides for "binding arbitration," it does so only "[i]n the absence of a Home Warranty Agreement." (Emphasis added.) That provision is not controlling in this case, because there is a home warranty agreement. The home warranty agreement expressly binds Adams, as well as the other parties. For these reasons, the trial court erred in ordering binding arbitration.
 IV. Summary
In summary, the home warranty agreement "evidenc[es] a transaction involving [interstate] commerce" within the meaning of the FAA, thus rendering the arbitration *Page 933 
clause specifically enforceable. However, although arbitration is mandatory, it is not binding. Consequently, the trial court's order, insofar as it ordered binding arbitration, is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HOUSTON, LYONS, and JOHNSTONE, JJ., concur.
[1] These provisions are contained in the 2000 edition of the warranty booklet, which both Adams and Bonded Builders produced in support of their motions to compel arbitration. Although the Adcocks actually received a 1997 edition, which differed slightly in terminology, the Adcocks do not object to the use of the 2000 edition for the resolution of this case. Indeed, they also rely on the terminology of the 2000 edition.
[2] "`[A]rbitration need not be binding in order to fall within the scope of the Federal Arbitration Act.'" Homes of Legend,Inc. v. McCollough, 776 So.2d 741, 748 (Ala. 2000) (quotingWolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir. 1998)).