Edwards Motors, Inc., appeals from an order of the Etowah Circuit Court denying Edwards's motion to compel arbitration in litigation filed against it by Gary Hudgins and Lora Hudgins. For the reasons discussed below, we reverse the trial court's order denying the motion to compel arbitration.
 Facts and Procedural History
Edwards is a motor-vehicle dealership located in Gadsden. The Hudginses purchased a 1993 model Infiniti automobile ("the vehicle") from Edwards on September 4, 2003. Edwards financed the purchase. The Hudginses executed a motor-vehicle installment sales contract ("the sales contract"), a credit application, a promissory note, and an arbitration agreement in connection with the purchase. *Page 445 
The sales contract stated that Edwards retained a security interest in the vehicle.[1]
Based on Edwards's belief that the Hudginses had either (a) moved the vehicle without Edwards's permission or (b) provided a false address on their credit application, Edwards initiated a criminal proceeding against the Hudginses on June 21, 2004, charging the Hudginses with defrauding a secured creditor in violation of Ala. Code 1975, § 13A-9-46.[2] The trial on the criminal charges was scheduled in the municipal court for the City of Gadsden on December 16, 2004. Before the trial, the parties agreed that the prosecution of the criminal case would be terminated if the Hudginses returned the vehicle to Edwards. The municipal judge who presided over the criminal proceeding was informed of that agreement and made the following notation in the record: "[To be dismissed] upon agreement of the parties to return vehicle." The criminal proceeding was dismissed on January 6, 2005. The Hudginses, however, did not return the vehicle, and, according to Edwards, they filed for bankruptcy protection on the morning on which they were to return the vehicle.
On August 25, 2005, the Hudginses filed a malicious-prosecution action against Edwards in the Etowah Circuit Court, alleging that Edwards had "maliciously and without probable cause" instituted the criminal proceeding. Edwards filed a motion on November 29, 2006, to compel arbitration of the malicious-prosecution action based on the arbitration agreement the Hudginses executed when they purchased the vehicle. The pertinent provisions in the arbitration agreement state:
 "In connection with the undersigned's acquisition of the below described motor vehicle . . ., the undersigned and [Edwards] mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of or relating to or concerning all of the contracts) and agreements entered into by the parties of and concerning the below described motor vehicle, and business relationships resulting therefrom, as follows: . . . The undersigned agrees that all disputes not barred by applicable statutes of limitations, whether denominated as a claim, counter-claim, cross claim or third party claim, resulting from or arising out of or relating to or concerning the transaction entered into (including but not limited to: any matters taking place either before or after the parties entered into this agreement, including any prior agreements or negotiations between the parties; the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services acquired by the undersigned; the past, present and future condition of the motor vehicle; the conformity of the motor vehicle to any contract description; the representations, promises, undertakings, warranties, or covenants made by [Edwards] in connection with the undersigned's acquisition of the motor vehicle, or otherwise dealing with the motor vehicle; any lease terms or the terms of credit and/or financing in connection therewith; any terms or provisions of any credit life and/or disability insurance *Page 446 
. . . [or] extended service contract . . .; and all claims or disputes as to any body and/or mechanical repairs made to the vehicle . . . at any time . . .) shall be submitted to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C Section 1, et seq. and according to the Commercial Rules of the American Arbitration Association. . . ."
(Capitalization in original; emphasis added.) In support of its motion, Edwards submitted evidence to the trial court indicating that the vehicle had been manufactured in Japan, that it was first titled in Virginia, that it was inspected in the District of Columbia, that it was purchased at an auction in Tennessee, and that the financing of the sale to the Hudginses had been facilitated through the services of a credit-reporting bureau in Georgia. On March 17, 2006, the trial court denied Edwards's motion. Edwards appealed.
 II. Standard of Review
We recently set out the standard of review for a ruling on a motion to compel arbitration. We stated in Carroll v. W.L.Petrey Wholesale Co., 941 So.2d 234 (Ala. 2006):
 "`"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo
determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So .2d 441, 446 (Ala. 1999). Furthermore:
 "`"`A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. "After a motion to compel arbitration has been made and supported, the burden is on the nonmovant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."'
 "`"Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (emphasis omitted))."
 "`Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala. 2002).'
 "Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1083 (Ala. 2005)."
941 So.2d at 236.
 III. Analysis
A narrow issue is presented by this appeal: Should the trial court have compelled arbitration of the Hudginses' malicious-prosecution claim, which arose from Edwards's filing criminal charges against the Hudginses in connection with the financing of the vehicle purchased by the Hudginses?
The arbitration agreement contains expansive language that provides for binding arbitration "in connection with the resolution of any dispute arising out or relating to or concerning all of the contract(s) and agreements entered into by the parties of and concerning the . . . vehicle, and business relationships resulting therefrom." The arbitration agreement further states that "all disputes . . . resulting from or arising out of or relating to or concerning the [purchase of the vehicle] (including but not limited to: any . . . [dispute concerning the] terms of credit and/or financing . . .), shall be submitted to BINDING ARBITRATION. . . ." (Capitalization in original.) *Page 447 
Edwards has met its burden to prove the existence of a contract providing for arbitration. Adcock v. Adams Homes, LLC,906 So.2d 924, 929 (Ala. 2005) (movant has burden to prove the existence of contract containing arbitration provision). Further, Edwards has demonstrated that the sale of the vehicle was a transaction that affected interstate commerce.906 So.2d at 929-30 (party seeking to compel arbitration has burden to demonstrate that the transaction affects interstate commerce).
The dispute the movant seeks to arbitrate must fall within the scope of the arbitration agreement. See Cook's Pest Controlv. Boykin, 807 So.2d 524, 527 (Ala. 2001) (arbitration not compelled where movant attempted "to enforce the clause beyond its scope"); W.L. Petrey Wholesale Co., supra (claims not arbitrable because they fell outside the scope of the agreement containing the arbitration clause). As stated above, the burden of proving that the dispute falls outside the scope of the arbitration agreement shifts to the nonmovant after the movant proves the existence of a contract containing an arbitration provision and that the transaction that is the subject of the contract had an impact on interstate commerce.W.L. Petrey Wholesale Co., supra; Fleetwood Enters.,Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000). Moreover, in construing the scope of an arbitration agreement, the Court has noted that "`arbitration agreements [are] as enforceable as any other contracts, but not more so.'" Hales v. ProEquities,Inc., 885 So.2d 100, 105 (Ala. 2003) (quoting Prima PaintCorp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 404
n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). "`"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."'" 885 So.2d at 105 (quoting AT TTechs., Inc. v. Communications Workers of America,475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).
The dispute Edwards desires to arbitrate is the malicious-prosecution claim arising from its institution of a criminal complaint against the Hudginses based on their purported violation of Edwards's security interest in the vehicle. This Court recently held in Dan Wachtel Ford, Lincoln, Mercury,Inc. v. Modas, 891 So.2d 287 (Ala. 2004), that a malicious-prosecution claim against an automobile dealer was arbitrable.[3] The facts in Dan Wachtel Ford are similar to those here.
Modas, the plaintiff in Dan Wachtel Ford, contracted to purchase a used sport-utility vehicle ("the SUV") in a transaction that contemplated financing through a third party. Modas took possession of the SUV after signing a retail installment contract, a credit application, a stand-alone arbitration agreement, and several other documents related to the purchase. Subsequently, Modas was advised that financing could not be obtained for the purchase of the SUV. Because the retail installment contract could not be assigned by the dealer to a finance company, the dealer instructed Modas to return the SUV.[4]
Modas agreed to return the SUV if the dealer would return to her title to, and the possession of, the vehicle Modas had traded to *Page 448 
the dealer when she signed the transaction documents to purchase the SUV. That swap was not possible, however, because the dealer had sold the trade-in vehicle shortly after Modas took possession of the SUV. Dan Wachtel Ford, 891 So.2d at 288-89.
An impasse developed between Modas and the dealer concerning the conditions for the return of the SUV. When Modas did not return the SUV, the dealer repossessed it and initiated criminal charges against Modas for "theft by deception." That charge was eventually nol-prossed. After the charge was nol-prossed, Modas filed claims in the Limestone Circuit Court seeking damages on the tort theories of conversion of the trade-in vehicle, trespass to personal property, malicious prosecution, and abuse of process. Relying on the arbitration agreement Modas had signed when she took possession of the SUV, the dealer moved to compel arbitration. As here, the trial court in Dan WachtelFord refused to enforce the arbitration agreement, and the dealer appealed. 891 So.2d at 289-90.
Holding that the arbitration agreement remained effective despite the failure of the parties to complete the sale, the DanWachtel Ford Court compelled arbitration. 891 So.2d at 293. Among other arguments, Modas contended on appeal that her tort claims were outside the scope of the arbitration agreement. In rejecting that argument, the Court in Dan Wachtel Ford
stated:
 "Modas next argues that the language of the arbitration agreement is not sufficiently broad in scope to encompass her claims. We reject this argument. Modas sued Dan Wachtel Ford alleging conversion of her 1999 Cougar, trespass to her personal property, malicious prosecution, and abuse of process. The claims alleging conversion and trespass arise directly out of her purchase transaction with Dan Wachtel Ford; Modas's claims of malicious prosecution and abuse of process arise out of actions taken by Dan Wachtel Ford upon Modas's refusal to return the [SUV]. All these claims are `claim[s] . . . resulting from or arising out of or relating to or concerning the transaction entered into' and, therefore, they are encompassed within the scope of Modas's agreement to arbitrate."
891 So.2d at 293 (emphasis added). The arbitration agreement executed by the Hudginses is virtually identical to the one enforced in Dan Wachtel Ford. Both agreements require arbitration of any dispute "arising out or relating to or concerning all of the contract(s) and agreements entered into by the parties of and concerning the . . . vehicle, and business relationships resulting therefrom . . . (including, but not limited to: any . . . [dispute concerning the] terms of credit and/or financing . . .)." Under these circumstances, DanWachtel Ford is controlling authority on the issue whether the Hudginses' malicious-prosecution claim against Edwards falls within the scope of the arbitration agreement.
All of the conditions for enforcement of an arbitration agreement — a contract calling for arbitration, the impact of the transaction on interstate commerce, and a dispute falling within the scope of the agreement — are present here. For that reason, we reverse the order denying Edwards's motion to compel arbitration and remand this cause to the trial court for proceedings consistent with this decision.
REVERSED AND REMANDED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
[1] The record does not contain a separate security instrument.
[2] Section 13A-9-46(a) states that "[a] person commits the crime of defrauding secured creditors if he destroys, removes, conceals, encumbers, transfers or otherwise deals with property subject to a security interest with intent to hinder enforcement of that interest." Defrauding a secured creditor is a Class A misdemeanor.
[3] A claimant must prove the following elements to prevail on a malicious-prosecution claim: "(1) a judicial proceeding initiated by the defendant, (2) the lack of probable cause, (3) malice, (4) termination in favor of the plaintiff, and (5) damage." Cutts v. American United Life Ins. Co.,505 So.2d 1211, 1214 (Ala. 1987).
[4] The terms of the retail installment contract stated that, if that contract was not assigned to a third party, that contract would be void and Modas would either return the SUV or pay cash for that vehicle. 891 So.2d at 293. *Page 449